# STATE OF MARYLAND

*vs.*

# JAMES JENKINS.

*"Jim Crow" laws*: *Chapter 248, Acts of* 1908; *constitutional as
to intra-state passengers.   Statutes*: *interpretation; legis-
lative intent; presumptions as to knowledge of de-
cisions of courts.   Indictments*: *exceptions;
when not be negatived.*

Chapter 248 of the Acts of 1908, regulating the transporta-
tion of white and colored passengers on railraods, is to be con-
strued as applying only to local, and not to inter-state, passen-
gers, and is not in conflict with the Federal Constitution.  p. 381

In construing the language and meaning of a statute, it is
not to be supposed that the Legislature intended it to apply to
cases to which the Court of Appeals had recently declared such
statutes could not constitutionally apply.                    p. 380

A statute, not intended to include cases, application to which
would not be constitutional, will not be declared invalid, merely
because its terms are sufficiently broad to include such cases.

p. 381

In general, in an indictment for an offense created by stat-
ute, it is sufficient to describe the offense in the words of the
statute.                                                     p. 382

Where a statute contains an exception so incorporated in its
enacting clause that the one can not be read without the other,
an indictment under the statute, to be valid, must negative the

exception. But where, after general words of prohibition, an exception is created in a subsequent clause or section, before such an exception can be successfully availed of as a matter of defense to an indictment, it must be interposed by the accused.

p. 381

An exception that is not contained in a statute itself, but is made only by reason of a provision in the Constitution, need not be negatived in an indictment under the statute.          p. 383

An indictment for violating Chapter 248 of the Acts of 1908, which regulates the transportation of white and colored passengers, and whose terms are broad enough to affect inter-state passengers, as well as local passengers, is not demurrable, merely because it does not contain an averment that the traverser was not an inter-state passenger.                    pp. 378, 383

*Decided December 4th, 1914.*

Appeal from the Criminal Court of Baltimore City. (ELLIOTT, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Horton S. Smith* and *Lindsay C. Spencer, Assistant State's Attorneys for Baltimore City* (with whom was *Edgar Allan Poe, Attorney General,* and *Wm. F. Broening, State's Attorney for Baltimore City,* on the brief), for the appellant.

*W. Ashbie Hawkins* (with whom was *George W. F. McMechen* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee was indicted for refusing to occupy the seat in a car on the Washington, Baltimore and Annapolis Electric Railway Company to which he had been assigned by a conductor in charge of the car. He demurred to the indictment "for the reason that the Act of Assembly therein set forth is unconstitutional and void, in that it denies to him the equal protection of the law, is contrary to the Constitutions of the State of Maryland, and of the United States of America, and for other errors appearing in the record." The demurrer was sustained by the lower Court, and this appeal was taken by the State. The traverser was indicted under Chapter 248 of the Acts of 1908, page 88 (now codified in 3rd Vol. of Code in Article 27, sections 398-403, inclusive). Section 1 of that Act provides that,

> "Conductors or managers of all railway companies and corporations, and all persons running or operating cars, or coaches by electricity, running twenty miles beyond the limits of any incorporated city or town of the State for the transportation of passengers, are hereby authorized and required to designate separate seats for white and colored passengers, without any difference in the quality of or convenience or accommodation of the seats in such cars or coaches. The ordinary seat for two persons shall be deemed a separate seat within the meaning of the Act."

Section 2 prohibits discrimination in the quality of or convenience or accommodation in the seats, etc. Section 3 requires conductors or managers of railways to assign to each white or colored person his or her respective seat in the car, and provides that if a passenger refuses to occupy the seat to which he or she may be assigned, the conductor or manager can refuse to carry such passenger and may put him off the car, etc., and then contains the following provision:

> "and the passenger so refusing to occupy the designated seat to which he or she may be assigned shall be deemed guilty of a misdemeanor, and on indictment

and conviction thereof, shall be fined not more than
fifty dollars, or be confined in jail not more than
thirty days, or both, in the discretion of the court,
for each offense."

Section 4 imposes a penalty on the conductor or manager
who upon request refuses to perform the duties imposed upon
him by the Act. Section 5 authorizes the conductor or man-
ager in charge of the car to assign passengers of the same
color to vacant seats, when the seats are all occupied but not
filled, and with the permission and consent of the occupant
to assign a passenger of the other color to an unoccupied seat.
Section 6 exempts persons employed as nurses or valets, when
accompanying those needing attention.

The indictment contains only one count and follows the
language of the statute—describing the traverser as a colored
person and a passenger on the car.

This Act is very similar in most of the provisions, to Chap-
ter 109 of the Acts of 1904, excepting the latter applied to
companies, corporations and persons running or operating
cars or coaches by steam. In *Hart* v. *State,* 100 Md. 595, we
held that the Act of 1904 could not under the Constitution of
the United States be made applicable to interstate passengers,
and must be construed as not applying to them, but we said:
"As that question was also argued, it is proper to add that
we see no difficulty in sustaining the law, in so far as it
applies to intra-state passengers." In that case the indict-
ment alleged that the appellant being of the colored race, was
a passenger on a train of the Philadelphia, Baltimore and
Washington Railroad Company operating cars and coaches
by steam upon its railroad in the State of Maryland on a
ticket—"which he had purchased in the City of New York
for a continuous transportation therefrom by and over said
railroad through the State of Pennsylvania and Delaware
and said State of Maryland to the City of Washington." It
might therefore be suggested, although it was not at the argu-

ment of this case, that the validity of the statute as to intra-state passengers was not involved in the *Hart case,* and hence that decision is not binding on this Court. But the Act of 1904 was attacked as an "inseparable statute," and it was strenuously contended that it must fall in its entirety, and could not be held valid as to intra-state passengers. In our investigation into the validity, *vel non,* of the statute, as applying to interstate passengers, it was necessary to examine and carefully consider the authorities—especially the decisions of the Supreme Court of the United States—in reference to the powers of the States to pass statutes which it had been contended in those cases infringed upon the commerce clause, or, in some instances, other provisions of the Federal Constitution. As that investigation left us in no doubt on the subject, and as we felt called upon to determine whether the statute in its entirety must be stricken down or, inasmuch as we determined that the State had no power to make such a law applicable to interstate passengers, whether it should be construed to be limited to that class concerning which the State could validly legislate and hence presumably the Legislature so intended, we passed on the question. We do not deem it necessary to fortify the conclusion then reached by us by citing additional authorities, but are content to rest our decision on those then referred to. As the personnel of the Court has greatly changed since the *Hart case,* it may not be out of place to add that all of the judges who sat in this case concur in the conclusions then reached, both as to interstate and intrastate passengers, and are of the opinion that the statute now under consideration must be similarly construed. The main distinction between the two statutes, suggested at the argument, was that the exemption from the effect of the Act of 1904 embraced classes, not in the Act of 1908, which indicated the intention of the Legislature to limit the former Act to intra-state passengers. It is true that we said: "It may be questionable whether our statute does not contemplate confining

the law to local business, as in section 7 it exempts parlor and sleeping cars and 'through express trains that do no local business,' " but we did not base our conclusion on that alone, and as the decision in that case was rendered in 1905, it would be unjust to the Legislature to suppose that it intended the Act of 1908 to apply to those whom this Court had so recently held it could not apply to. We can have no hesitation therefore in holding that the Act of 1908 must be construed to apply only to intrastate passengers, and not to interstate passengers, and hence is not in conflict with the Fderal Constitution.

The ruling of the lower Court cannot therefore be sustained on the ground that the statute is invalid because its terms are sufficiently broad to include interstate passengers, and the main reason relied on by the appellee why the judgment should be affirmed was that the indictment does not state or show whether the traverser was an interstate or intrastate passenger, and does not negative the constitutional exception, if the statute be construed as exempting interstate passengers by reason of the Federal Constitution. The general rule, which has frequently since been repeated, was thus stated by JUDGE BRISCOE in *Stearns* v. *State,* 81 Md. 341, "where a statute contains an exception so incorporated in its enacting clause that the one cannot be read without the other, the indictment or information must negative the exception. But where, after general words of prohibition, an exception is created in a subsequent clause or section, it must be interposed by the accused as matter of defense." *Kiefer* v. *State,* 87 Md. 562, is an illustration of the former, and *Ruggles* v. *State,* 120 Md. 553, of the latter. But there are a number of cases in this State which seem to us to be directly on the point in question. In *Dickhaut* v. *State,* 85 Md. 451, the traverser was indicted for having in his possession ninety-six rabbits, the prosecution being under the Act of 1894, Ch. 404, which provided that "No person shall shoot or in any manner catch, kill or have in possession * * * any rabbit

between the 24th December and the 1st of November next ensuing." The defendant demurred to the indictment and his demurrer having been overruled, he filed a motion to quash it on the ground, "first, that the statute is intended to apply only to persons who shall shoot or in any manner catch or kill any rabbit in the State of Maryland or have in possession any rabbit, so killed, &c., in this State within the prohibited time, and, second, that the indictment is defective because it does not so describe the defendant as to bring him within the class of persons to which the statute applies." This Court held that that statute did not apply to game killed in another State, but in possession in this State, but the Court said: "It was contended that the indictment is defective because it did not sufficiently describe the defendant and failed to allege that he had in his possession game shot, &c., in this State during the closed season. It is well settled as a general rule that in an indictment for an offense created by statute it is sufficient to describe the offense in the words of the statute. *Parkinson* v. *State,* 14 Md. 184; *Cearfoss* v. *State,* 42 Md. 403; *Mincher* v. *State,* 66 Md. 227. The pleader has followed this rule in this case, and hence the objection is not a valid one. There was also a motion to quash the indictment upon the same ground, and this was also properly overruled."

In *Wright* v. *State,* 88 Md. 436, the traverser was indicted for violating the law prohibiting the sale of oleomargarine. The indictment was demurred to, but the demurrer was overruled. It was contended that if the statute in question could be maintained, as applied to a sale in Maryland by a citizen of Maryland, yet the indictment was bad because the decision in *Schollenberger* v. *Pennsylvania,* 171 U. S. 1, had imported into the statute an exception in favor of non-residents of Maryland, and the indictment did not negative the exception. JUDGE PEARCE, in speaking for the Court, said: "where an exception is so incorporated with the enacting clause of a statute, that one cannot be read without the

other, it is well understood that the rule of pleading requires the indictment to negative such exception; but whether this rule could be invoked in any case where the exception does not actually appear as part of the text of the statute, and where the exception is the result of judicial construction, may well be doubted." The Court then went on to say that waiving the doubt the indictment did allege what was equivalent to an averment that the traverser was a citizen of Maryland, and hence did not decide the question there raised. But later, on page 445, the Court did pass on a question practically identical with the one now before us. It was argued that the Maryland Act was unconstitutional under the decision in *Schollenberger's case,* as to all of the world except citizens of Maryland, because in violation of the interstate commerce rule, and if we held the Act valid as to citizens of Maryland, though invalid as to the rest of the world, we would give to the statute a positive operation beyond the legislative intent and beyond what any one could say it would have enacted. The Court then set out a special verdict found in the *Schollenberger case,* and after referring to the decision said: "In that case, a Federal question, arising under the commerce clause of the Federal Constitution, was directly presented to the Court, but such is not the case here. Here the question is presented upon demurrer to the indictment, and upon the face of the indictment no Federal question is presented. * * * Whatever may be the law upon the facts before the Court in *Schollenberger's case,* there can be no question that upon this demurrer the indictment must be sustained, since even in *Schollenberger's case* the Act in question was held invalid only to the extent that it prohibits the introduction of oleomargarine from another State, and its sale in the original package as described in the special verdict." See also *Fox* v. *State,* 89 Md. 381, 388, and *Rasch* v. *State,* 89 Md. 755, 760. Those cases not only furnish authority to justify the construction of a statute which is general in its terms so as to exclude from its operation those who could not under the Federal Con-

stitution be liable, but to hold it to be valid as against those the State can affect, but they in effect held that an indictment is not invalid because it does not negative an exception to the statute which is made by reason of a provision in the Federal Constitution. If this traverser was an interstate passenger he could have so set up in a special plea. As this Court had decided in the *Hart case* that the Act of 1904 was not applicable to interstate passengers, presumably the State's Attorney was proceeding on the theory that the traverser was an intrastate passenger, and it is not likely that injustice will be done by indicting any known to be interstate passengers, but, however that may be, the law in this State is well settled as to when exceptions in a statute must be negatived in an indictment, and it is clear that one which is not contained in the statute at all, but is made by reason of a constitutional provision need not be negatived.

No other objection to the indictment was pointed out, and it follows from what we have said that the judgment must be reversed and the case remanded in order that the traverser may be tried upon the indictment against him.

*Judgment reversed and the case remanded,
the appellee to pay the costs.*