**CARTER v. SCHOOL BOARD OF
ARLINGTON COUNTY et al.**

Civ. No. 331.

United States District Court
E. D. Virginia, Alexandria Division.

Dec. 7, 1949.

Hill, Martin & Robinson, of Richmond, Virginia, Leon A. Ransom, of Washington, D. C., for plaintiff.

Lawrence W. Douglas, of Arlington, Virginia, for defendants.

BRYAN, District Judge.

The complaint here is that in their operation of the public schools the School Board and Superintendent of Schools of Arlington County, Virginia, have discriminated against Negro students by failing to provide them, solely on account of their race or color, with facilities and opportunities for high school education equal to those furnished the white students. It is a class suit—on behalf of all Negroes of high school age residing in the county—and jurisdiction of the Federal court is predicated on an averred denial of the due process and equal protection clauses of the Fourteenth Amendment. Appropriate relief is prayed by way of a decree declaratory of their rights and an injunction restraining a continuance of the alleged deprivations.

This action was commenced on September 4, 1947, but for good cause, on the agreement of the parties, it was continued from time to time and the trial not commenced until September 6, 1949. By the original complaint, as amended October 15, 1947, Constance Carter, the plaintiff, alleged that she was a person of African descent, a resident of Arlington County, State of Virginia, and an infant of school age required by the laws of Virginia to attend the public schools. She charged that in September 1947, being eligible to enter, she sought registration in the high school designated for Negro pupils in Arlington County and requested enrollment, in addition to the required courses, for the elective courses of Spanish, Civics III, Typewriting and Physical Education, but that she was advised by the principal of the high school that no course in Spanish or Civics III was offered, that typewriting could not be offered because, though machines were available, there were no tables or desks for the purpose, and that no course in physical education was provided. Thereupon, she

avers, she applied to the high school in Arlington County set apart for the white children, to take the courses desired by her and then afforded there, but that she was denied admission by reason of her race or color only, pursuant to the mandate of the Constitution and statutes of Virginia segregating the races in the public schools. The defendants, who are the legal authorities for the establishment, maintenance and operation of the public schools in Arlington County, are charged with pursuing, and having over a long period of years pursued, a policy, custom and usage discriminatory against the Negroes, solely on account of their race or color, in providing educational facilities for colored high school pupils in the County.

The defendants deny any difference in the facilities for the white and colored high school children, they deny any discrimination whatsoever, and they especially deny that any disparity in the facilities is due to race or color, or to an intent, purpose or policy of discrimination. They traverse categorically the allegations that Constance Carter was refused any of the courses she sought; they say she was expressly told that the courses mentioned in her inquiry would be taught, and that any other course would be given as and when qualified students required them.

During the course of the trial Constance Carter married and withdrew from school. With the consent of the defendants, intervention was permitted of two infant colored high school students, Julius Brevard and Peggy Council, both residents of Arlington County, Virginia. Their petition simply nominated the intervenors as specific plaintiffs to prosecute the suit for the class and sets forth their own experiences in unsuccessfully seeking courses of instruction at Hoffman-Boston. Brevard averred that he desired to take auto mechanics in the colored high school but that it was refused him as not offered, although it was available in the high school for white children. Peggy Council says that she asked for courses in Latin, Chemistry and Shorthand Reporting, but that they

were not obtainable, although taught in the white high school.

Generally the discrimination is charged in the physical equipment, such as buildings, teaching tools and recreational areas, as well as in the curricular offerings and the qualifications of the instructional staffs. We pass to a consideration of each of them.

Comparative High School Population.

Perhaps the outstanding fact in this case is that for the last three sessions the white high school has had an average of 1,800 students and the colored high school 26.

There are but two high schools in Arlington County. The white high school is the Washington-Lee High School and the colored is the Hoffman-Boston High School.

Both house junior high school classes in addition to the senior high school, the latter comprising Grades 10, 11 and 12. Hoffman-Boston also includes elementary classes, but the total school population there, for elementary, junior and senior high school, is less than 300. Washington-Lee has no elementary pupils and its total population, junior and senior high school, is about 2,300. These figures are the school populations for the sessions 1946-47 and 1947-48. There was no substantial change in the 1948-49 session in the white school, but for that year the high school at Hoffman-Boston increased, from 12 and 18, in the two prior school years, to 48, of whom 13 were boys and 35 were girls, but during the two previous years there were only 3 boys in high school.

School Plants.

The photographic exhibits placed in evidence are accurate and most informative. Their accuracy was confirmed by a personal inspection by the judge of this court of the buildings, rooms and grounds of each school.

Hoffman-Boston is a two-story brick building erected in 1923 with additional class rooms added in 1930, and a separate temporary structure for elementary classes was put up in 1948. A vocational building, a few yards distant from the main building, was constructed in 1941.

Washington-Lee likewise consists of a brick building and a separate shop building. The main building is of three stories and was put up in 1925. Additions came in 1932 and 1935. The separate shop building was not available until 1942.

Hoffman-Boston has grounds of about 6 acres, for its 300 students, and Washington-Lee has approximately 12 acres for 2,300 pupils. The latter is located in or near the commercial zones of Arlington County (an almost urban county) and consequently is adjacent to streets and business traffic arteries. Hoffman-Boston is in the southern end of the County adjoining the golf links of the Army-Navy Country Club, removed from business and industry, and is sited on an eminence overlooking the Shirley Highway and the approaches to the Pentagon Building and the City of Washington.

The buildings of both schools are in good repair and condition and are well maintained.

Comparative Expenditures.

While it is not a decisive factor because of the great divergence in the population of the two schools, the per pupil expenditures for the two schools is significant in a search for discriminatory neglect.

For the sessions of 1946-47 and 1947-48 more than twice as much was expended, per senior high school student, for teachers' salaries, in the Hoffman-Boston than in Washington-Lee. During these sessions the amount paid per pupil for the operation and maintenance of Hoffman-Boston was 2½ or 3 times that for Washington-Lee. During the last session, 1948-49, the difference was not so great in the per pupil teachers' salaries, because of the increase in the number of Negro students in the high school, but in that year the maintenance of the schools per pupil was $3.52 for Washington-Lee and $76.67 for Hoffman-Boston.

The expenditures for other facilities is worthy of note. In 1947-48 Washington-Lee received for library books $912 against $150 for Hoffman-Boston, while in the school year just past the expenditures for the same purpose were $1,038 at Washing-

ton-Lee and $735 for Hoffman-Boston. For shop and similar equipment $800 and $2,-200, respectively, was laid out in each of the last two sessions for Washington-Lee, and at Hoffman-Boston, $200 and $1,500. For commercial instruction equipment at Washington-Lee $500 was expended in 1947–48 and $250 at Hoffman-Boston. Moreover, the capital investment figures at each school shows an average for the last three sessions for each high school pupil to be $721 for the colored and $417 for the white student.

### Interior Facilities of Buildings.

The class rooms of the two schools are comparable in every way. Inspection was made of all the lavatories and toilets, and they were found to be sanitary and modern in both schools.

Each school has an auditorium. The one at Washington-Lee is much larger but it will seat at one time only about half of the student body. Because of the permanency of its seating arrangement, it can be used for no other purpose. At Hoffman-Boston the auditorium is not as extensive and is simpler in design, but is well appointed and apparently quite adequate. It will accommodate at one time all of the junior and senior high school students of the school. It is nontheless inferior because its seats are not fixed theatre seats but are movable. Indeed, it is for this reason more valuable, being convertible to other and numerous purposes requiring unoccupied floor space.

At Washington-Lee there are two gymnasiums. One, used by the girls, is a recessed extension of the stage of the auditorium, but equipped with sliding partitions between them. It was planned so as to allow occupants of the auditorium to witness activities on the floor of the gymnasium, but this has not proved practicable. The level of the auditorium seats is too low to permit a full view of the gymnasium. Separate and simultaneous use of the gymnasium and the auditorium is not possible because the noise from the gymnasium interferes with the program on the stage of the auditorium. The gymnasium floor is not large enough to allow room for a regulation basketball court, but is used for basketball and affords space for gymnastic equipment. There are showers for the participants. The other gymnasium is used by the boys and is sufficient for basketball or similar games, although not large enough for a regulation basketball court.

At Hoffman-Boston there is no separate gymnasium. The auditorium, by the removal of the seats, is convertible for use in calisthenics and such other uses as the small high school student body could make of a gymnasium. Mats and other gymnastic equipment are furnished. However, the structural columns in the room interfere with ball games and it contains no courts for them. There are no showers. It does have the advantage of giving an area for recreation and physical education every day to all the students, which is not obtainable by the Washington-Lee students, as its gymnasiums can receive not more than half of the students each day, and only half of the students can receive physical education. However, the Hoffman-Boston gymnasium is not adequate and will be discussed again.

Home economics instruction facilities are far better at Hoffman-Boston than at Washington-Lee. Indeed, at the latter no real provision is made for this course in respect to sleeping, living and dining-room facilities.

Washington-Lee has a room for choral music, accommodating 63 persons, and one for instrumental instruction, having a capacity of 50 students, while Hoffman-Boston music classes meet in its auditorium for choral and instrumental music, and some music classes are held in a small class room, formerly occupied as an office by the principal. The auditorium and class room in Hoffman-Boston provide accommodations equal to the special rooms in Washington-Lee, and considering again the difference in the number of students, the advantage is in favor of Hoffman-Boston.

Library space and equipment in each school are most acceptable. The space at Washington-Lee is more extensive than that at Hoffman-Boston, but still again the smaller demand at Hoffman-Boston gives

each of its students greater opportunity to use the library.

The libraries of both schools contain general works, and books on history, sciences, biography, and other appropriate subjects. Both have current periodicals and newspapers. Washington-Lee has far more volumes in number, and a greater variety of newspapers and periodicals, but the defendants are ready to provide any book, newspaper or periodical required or desired at Hoffman-Boston.

Perhaps the facility most disputed is the shop room space and equipment. Each school has a separate building for the teaching of the industrial arts. Washington-Lee has separate shop rooms for automobile mechanics, machine work, and printing as well as woodwork. Hoffman-Boston has all of this, save automobile mechanics and printing, in one shop. It is in a separate building, and is well equipped and capably staffed. Bricklaying is available at Hoffman-Boston but not at Washington-Lee. We will later discuss the absence of auto mechanics and printing at Hoffman-Boston.

A cafeteria exists at Washington-Lee, while none is at Hoffman-Boston. This may well be accounted for by the difference in the demands therefor by reason of the disparity in the school populations, and it is doubtful that a cafeteria is needed. There is none in one of the county's latest white junior high schools.

### Exterior Facilities.

Hoffman-Boston has no football field or baseball diamond, stadium or running track. Its student body of 3 boys in the sessions 1946-47 and 1947-48, and 13 in the session 1948-49 would not support such teams. It does have outdoor basketball courts, soft ball diamonds, horseshoe pitching grounds and areas for other play. The grounds of one school compare favorably with that of the other in appearance and maintenance, but the grounds at Hoffman-Boston should be further graded and trimmed.

### Health Supervision.

Each school has the services of a health nurse. Washington-Lee has an infirmary, but Hoffman-Boston none. The latter has dental inspections while Washington-Lee has none, and each school provides for physical examinations, and sight and hearing tests.

### Teachers.

Teachers' salaries in Arlington County are among, if not, the highest in the State. The compensation of teachers of white and colored teachers is on the same basis. If the teachers of the white school are paid more than in the colored school, it is because the former have more experience. They are not selected because of greater experience, but greater experience is more readily found among white teachers because the Negroes have not devoted their time to this profession from as early a date as have the white population.

As to the respective qualifications of the white and Negro faculties, it is to be observed that in the Negro schools no teacher is without a baccalaureate degree, while in the Washington-Lee High School almost 10% of the teachers are without such degree. Each white teacher must daily instruct about 15% more pupils than the colored teacher.

In Washington-Lee nearly all teachers instruct in but a single subject. At Hoffman-Boston a teacher may give two or three subjects. Sound argument can be made for the advantages of both. For the first, specialization is said to lead to expertness; for the latter, coordination of the several subjects is said to be gained. This difference in method has not been shown to result in a difference in teaching results in the two schools.

### Natural Science Facilities.

Each school teaches biology, chemistry and physics. Washington-Lee has a greater quantity of equipment. It has several science rooms. Hoffman-Boston has ample equipment and, although it is in a single science room, it affords facilities equivalent to those at Washington-Lee.

### Curricula.

The course of study offered in each school at the present time is such as to place them both on the accredited list of the Virginia Department of Education.

The Hoffman-Boston School was not so accredited until the session of 1948-49. The Southern Association of Colleges and Secondary Schools, a voluntary organization setting up standards of education, has approved the Washington-Lee diploma. This body has not yet approved the Hoffman-Boston School and application has not been made for such approval. Apparently it is now eligible for approval.

There are many subjects taught at Washington-Lee that are not taught at Hoffman-Boston. However, the evidence conclusively shows that there are no courses requested or desired at Hoffman-Boston which have not or will not be provided. The method of ascertaining what subjects should be taught at Hoffman-Boston is practical and approved by educationists. It includes a survey, made in the spring of each year, to ascertain what subjects will be desired for the following session. This survey is accomplished by issuing interrogatories to the students then in attendance asking what will be desired by them for the next session, by inquiring of the curricular demands through public meetings of parents, such as parent-teacher associations and similar organizations, and by making inquiry in any other known fields.

Any course found needed is provided. The school authorities have adhered to this practice in the past and now vouch in this case their willingness to meet in the future any demand for any high school course.

The specific demands made by the named-plaintiffs may well now be discussed.

### Application of Constance Carter.

According to her mother's testimony, Constance Carter, the original plaintiff, applied in September 1947 to take Spanish, civics III, typewriting and physical education at Hoffman-Boston but was told they were not available to her. Actually, all of these courses were given in the session 1947-48. The principal denies that she was in fact refused them, but he says she would have been refused civics III because it was for advanced students only. Although present in court, Constance Carter did not testify to corroborate her mother. The principal says that he understood the application to include physics III (and the complaint here first alleged physics III) and he advised that the physics course was not available. She then matriculated in a Washington, D. C. school, for the first semester, so she could take the desired courses, but she seems not to have taken them there. She returned to Hoffman-Boston for the second semester.

### Application of Peggy Council.

This intervenor entered Hoffman-Boston as a 11-A student in February 1949. She says she unsuccessfully applied, on September 6th of this year, to take Latin, chemistry, shorthand and typing. She was then an 11-B and eligible to take three of them only. There was a teacher ready and qualified to teach Latin, but as Peggy Council had not signified her intention, upon the interrogatory given her for the purpose last May, to take Latin this session, and as no other student had asked for it, Hoffman-Boston did not intend to give Latin, and for these reasons the principal informed her it was not available. Shorthand and typing both are being given. Typing has been offered for several years. On the first day of school it was thought that shorthand should not be given until the students had completed their typing courses. However shorthand is now offered. Chemistry is given in alternate years. It was given last year, but this year instead there will be biology, botany, and physics. Although chemistry was listed as available for this year, Peggy Council did not check it as desired when last May she made out a card of the courses she wished this session. At Washington-Lee no course is offered unless as many as eighteen students ask for it.

### Application of Julius Brevard.

This young man testified that on the second day of this trial, which was the second day of school, he asked the principal of Hoffman-Boston if he could take auto mechanics and was told it was not to be had. The principal testified that the inquiry was made of him casually "in a

transit period", when he was moving from the classrooms to the office, and the request was never pressed seriously or discussed with him in his office, and he has had no opportunity to discuss the matter with Brevard so as to give a final decision. The Assistant Superintendent stated that the principal could not give the final answer on such a question and it had not been brought to his office by the student or his parents. Apparently the request was never seriously pressed. No other student had ever sought the course. It cannot be said that this course has been denied Brevard.

### Past Record of Offerings.

As demonstrating the fulfillment by the Hoffman-Boston School of the real demands of its students, the following uncontroverted testimony is enlightening.

Hoffman-Boston's Negro principal was questioned and answered as follows:

"Q. I now ask you whether or not you have ever received a request from any qualified student for any course that you have not been able to give prior to the current year's teaching, that is to say, the year that began this week, and, if there are any exceptions, you may state the exceptions. A. I may not remember all but I think there has been one. I know there has been one." (He then named electrical engineering as having been asked and refused, no high school offering it as a course.)

The Assistant Superintendent of Schools testified:

"Q. With the exception of the Davis case which you have just mentioned, will you state whether or not any course has been denied to any qualified colored student who requested it in the Arlington County school system, if that course was available in the white schools? A. Up until today, not to my knowledge."

Davis' was a request for a vocational course not given at Hoffman-Boston and he was placed at the Manassas Negro Vocational School in accordance with his wishes.

Explanation was made that, with the instant suit on trial and the school author-

ities in court during the first days of the session, the final curriculum at the schools of the county had not been finally settled for the session 1949-50 at the time the witnesses testified or when students Council and Brevard registered.

### Offering With No Applicants.

The plaintiffs take the position that if there are to be two high schools in Arlington County, one for the white and the other for the colored children, then constitutional equality demands that the colored school offer every course available in the white school, whether or not there are applicants for it. Therefore, they urge that it is discrimination if Hoffman-Boston does not make available every item of the Washington-Lee curriculum. This view is likewise advanced as to facilities.

In respect to both courses and facilities it is pressed to the extent of earnestly contending that the same and identical courses and facilities must, to avoid discrimination, be provided at each school, and that they must be offered although there may be no applicants for their study or use. For instances, that a faculty and organization for a summer school should have been provided at Hoffman-Boston, although its students were actually invited to register for the summer quarter and none applied; that teachers for such a summer course should have been sent to the rooms, and waited daily, until a possible student presented himself; that a teacher and a room should be ready at Hoffman-Boston for every course taught at Washington-Lee, no matter no pupils; that there should be a cadet corps at Hoffman-Boston High School, because there is one at Washington-Lee, although Hoffman-Boston High School students consisted of only 3 boys and 9 girls in the 1946-47 session, 3 boys and 15 girls in 1947-48 and 13 boys and 35 girls in the session of 1948-49; that the failure to have a football team among the boys during those years was evidence of discrimination, as was the failure to maintain a football field and stadium. These, it is said, are logically the burdens unseverably attaching to segregation.

▮ The Court does not believe that the failure of Hoffman-Boston to make empty offerings is discrimination. Deprivations falling within the prohibition of the Fourteenth Amendment must be actual as well as logical.

### Recapitulation of Advantages and Disadvantages.

The evidence shows that each school has some advantages over the other, and each school has disadvantages not suffered by the other, but a summary of them discloses that Hoffman-Boston and Washington-Lee give substantially the same treatment to each of their high school students.

Washington-Lee offers courses in auto mechanics and printing; Hoffman-Boston does not. Hoffman-Boston gives a course in bricklaying, Washington-Lee does not. The home economics instruction facilities at Hoffman-Boston far exceed the corresponding facilities at Washington-Lee.

Hoffman-Boston offers physical education to all of its high school students, but none is offered at Washington-Lee to the students of the 11th and 12th grades, some 900 in number.

Washington-Lee is so overcrowded that its corridors must be made into one-way-traffic arteries; study hours there must be spent in the rear of·rooms then being used for class instruction; Hoffman-Boston has no such overcrowding.

At Hoffman-Boston two teachers of physical education are provided for 375 children, while at Washington-Lee four must handle 1,100 children.

The library at Hoffman-Boston will accommodate all of its senior high school at one time, while at Washington-Lee only 6% or 7% of its students may be so accommodated. Thus the student at Washington-Lee has very limited library access, but the Hoffman-Boston student has easy and unrestricted enjoyment and benefit of the library.

Again, the sizes\of the classes at Hoffman-Boston are far more favorable. As an average Hoffman-Boston has between 20 and 25 to a class; at Washington-Lee a great many of the classes contain more than 35.

As we have already explained, the location of Hoffman-Boston is by far the better, having no constant traffic hazards as does ·Washington-Lee. The grounds are more spacious at Hoffman-Boston for each student, the available play ground greater.

It is fair to say that in classroom instruction the opportunities and facilities offered to the high school student at Hoffman-Boston are greater than those provided at Washington-Lee. This is.because, with the physical equipment equal, the Hoffman-Boston boy or girl receives a more individual instruction, enjoys a closer personal relationship to the teacher, is subject to a closer study by the teacher for counsel and guidance, and receives instruction under a coordination and correlation of subjects, rather than through a departmentalized form of instruction too often delaying the realization of the relationship of all subjects of study. Then, too, at Hoffman-Boston the individuality of the pupil is not "lost in the crowd". These are but the usual advantages to be gained from a school where the scholars are few.

### No Discrimination Exists.

▮ Upon a review of all the evidence, as clarified by a view of the various facilities of the two schools, the Court finds there is no discrimination. Certainly none has been proved by a preponderance of the evidence.

### Segregation as Discrimination.

It is said that, if the high school students of Hoffman-Boston were not forbidden by segregation to attend Washington-Lee, they would not be denied the opportunities of a large-populated school, such as a cadet corps, football, baseball and other activities dependent on numbers in a student body; that they are entitled to the opportunity whether or not availed of; and that the absence of opportunity due to size of school population, is actually due to segregation, which in turn is based on race or color and therefore unconstitutional.

▮ We do not have to pass upon the question whether segregation is in itself discrimination, because, as we have already pointed out, no discrimination in fact is

found. A fortiori, none is based on race or color. Indeed, the advantage is with the Hoffman-Boston student for educational opportunity in the classroom. There are differences in the schools but they are only differences and nothing more. They could exist between any two schools, whether for white students only, or for colored students only, or for both races. They could spring from a variance in size of schools, in the location of schools, or in the methods or manner of instruction, but such differences are not the discriminations outlawed by the Fourteenth Amendment.

The Court recognizes that neither the State constitution's mandate of segregation, nor economy to avoid the greater expense arising from the duplication of facilities necessary for segregated education, can excuse discrimination. Equality of treatment is unconditionally enjoined upon the State government by the Fourteenth Amendment in favor of all its citizens. All citizens must receive from the State in equal measure its protection and benefit. But neither the same nor similar treatment is commanded by the Amendment. Equal in its eyes means equivalent. It is obvious that identical treatment would not carry to every citizen equal protection or equal benefits under law. The State has never been proscribed by the Fourteenth Amendment from using different means to extend its benefits to different groups of its citizens, or from varying the form of its benefits, that every citizen's share may be equal in value.

However, if we must pass on the legal validity of segregation, we find that segregation in the public functions of the State, including education in public schools, is exclusively a State matter, and under the present decisional law of the Supreme Court, is not questionable save to assure equality. The United States Court of Appeals for this Circuit has quite recently said so. Corbin et al. v. County School Board of Pulaski County, 177 F.2d 924.

### Needs at Hoffman-Boston.

Returning to the facts of the instant case, and it is wholly factual, we say that undoubtedly the gymnasium at Hoffman-Boston should be improved, showers put in, sufficient rest rooms for the male teachers installed, its corridor walls should be painted, its grounds improved, and perhaps a cafeteria added. It is pertinent here to notice that in November 1948, at the instance of the School Board, an issue of bonds was voted by the people of the county containing an item of $250,000 for the construction of a gymnasium, additional shop facilities, infirmary, cafeteria, showers and rest rooms. This money will be used in accordance with plans already in hand for the erection and installation of these improvements.

But these, and similar inadequacies, are deficiences rather than discriminations. They are matters within the jurisdiction of the administrative branch of the state or county government. They are inadequacies or omissions that might be found existing in any school. They are not the result of discrimination. Such conditions are to be corrected by appeal to the administrative authorities.

It is clear from the evidence that there has been no intent, purpose or policy on the part of the defendants to neglect or discriminate against the colored schools of Arlington County. The unchallenged testimony that the elementary colored children are housed better than the white children of that class reveals an entire absence of intent to discriminate between the races in the schools. While "no intent" will not excuse actual disparity of treatment, if traceable to race or color, still just as truly, every inadequacy or insufficiency of provision in educational opportunities or other public facilities, is not discrimination, or evidence of discrimination, as denounced by the Fourteenth Amendment. A difference in provision may exist between the white, between the colored citizens, or between the white and colored citizens, without fouling the Amendment, if it is the result only of unattentive stewardship or faulty judgment or shortsighted planning by the responsible authorities. These are defects of administration for administrative correction, not

constitutional offenses for judicial interference.

### Regional School at Manassas.

The defendants showed that the Regional Vocational School, which is maintained by the Counties of Prince William, Fairfax and Fauquier, at Manassas, Virginia, some 20 or 25 miles from Hoffman-Boston, had entered into an agreement with Arlington County to accept for matriculation in its vocational courses students from Arlington County. The evidence was that this arrangement would take care of both white and colored students desiring to undertake vocational courses not available in the Arlington County schools. By virtue of this agreement approximately 40 or 50 white students have been entered there by Arlington County, and the defendants state that any student at Hoffman-Boston, not provided with the desired vocational study, will be given the courses, at the entire expense of Arlington County, in the Regional School at Manassas. For the transportation of the students to and from the School the County will operate convenient buses.

The plaintiffs contend that this is not an equal opportunity in respect to the course of auto mechanics and similar omitted courses, for the reason that the courses are actually offered at Washington-Lee and only the overflow of its students are sent to Manassas, while at Hoffman-Boston no such courses are offered, even for one student.

Although the judge of this court visited and inspected the facilities for the Negro students at the Manassas School, and finds them to be equal to those at Washington-Lee, it is unnecessary to pass upon this question, because there has been no showing of a denial by the Arlington County authorities of any such course to a Negro student.

In conclusion, we find that the evidence does not make out a case of discrimination. The complaint will be dismissed. This opinion is adopted by the Court as a statement of its findings of fact and conclusions of law.