## BOYER et al. v. GARRETT et al.
### Civ. No. 4152.

United States District Court
D. Maryland.
Dec. 30, 1949.

I. Duke Avnet, Baltimore, Md., Edgar Paul Boyko, William H. Murphy, Dallas F. Nicholas, Baltimore, Md., for plaintiffs.

Thomas N. Biddison, City Sol., Allen A. Davis, John J. Ghingher, Jr., Hugo A. Ricciutti, Asst. City Sols., Baltimore, Md., for Mayor & City Council of Baltimore and Board of Recreation and Parks.

John Henry Lewin, Baltimore, Md. (Venable, Baetjer & Howard, Baltimore, Md.), for certain members of the Board sued individually.

CHESNUT, District Judge.

Counsel state that this is a test case. It differs, however, from the ordinary test case in that the latter is generally brought to establish some new point of law, while the present case seeks to disestablish presently existing law. The point of law referred to is the doctrine that segregation of races with respect to facilities afforded by· the State for its citizens is within the constitutional exercise of the police power of the States respectively, provided, however, that the separate facilities afforded different races are substantially equal. This legal principle is, of course, not new. It has been the established doctrine of the Supreme Court of the United States for more than fifty years.[1]

The classic statement of the rule is found in Plessy v. Ferguson, 1896, 163 U.S. 537, 544, 16 S.Ct. 1138, 1140, 41 L.Ed. 256, where it was said: "The object of the amendment was undoubtedly to enforce the absolute equality of the two races before the law, but, in the nature of things, it could not have been intended to abolish distinctions based upon color, or to enforce social, as distinguished from political, equality, or a commingling of the two races upon terms unsatisfactory to either. Laws permitting, and even requiring, their separation, in places where they are liable to be brought into contact, do not necessarily imply the inferiority of either race to the other, and have been generally, *if not universally,* recognized as within the competency of the state legislatures in the exercise of *their police power.* The most common instance of this is connected with the establishment of separate schools for white and colored children, which have been held to be valid exercise of the legislative power even by courts of states where the political rights of the colored race have been longest and most earnestly enforced." (Italics supplied.)

In accordance with this constitutional doctrine the policy and practice of segregation of the races (Negro and white) is now the established policy and practice in 17 of the 48 States, including Maryland.[2] Thus in Williams v. Zimmerman, 1937, 172 Md. 563, 192 A. 353, 355, the Maryland Court of Appeals said: "Separation of the

1. The doctrine is illustrated by the following cases in the Supreme Court of the United States. Hall v. DeCuir, 1878, 95 U.S. 485, 24 L.Ed. 547; Plessy v. Ferguson, 1896, 163 U.S. 537, 16 S.Ct. 1138, 1140, 41 L.Ed. 256; Cumming v. County Board of Education, 1899, 175 U.S. 528, 20 S.Ct. 197, 44 L.Ed. 262; McCabe v. Atchison, T. & S. F. R. Co. 1914, 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169; Gong Lum v. Rice, 1927, 275 U.S. 78, 48 S.Ct. 91, 72 L.Ed. 172; State of Missouri ex rel. Gaines v. Canada, 1938, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sipuel v. Board of Regents of University of Oklahoma, 1949, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247.

2. For illustration see Maryland Annotated Code, 1939, Ed., art.· 27, §§ 440, 445, and 493, regarding intermarriage, etc.; art. 27, §§ 510–526, regarding interstate transportation by railroads and steamboats; art. 27, §§ 684, 696, 729, regarding reformatory and training schools, and art. 77, §§ 111, 192, 193, and art. 65A, § 1, relating to separate schools based upon race. The same policy and practice with regard to separate schools prevails in Baltimore City, a municipal subdivision of the State. See §§ 34 through 48 of art. 41 of the Baltimore City Code of 1927.

races is normal treatment in this state." In University of Maryland v. Murray, 1935, 169 Md. 478, 182 A. 590, 592, 103 A.L.R. 706 the Court stated: "Equality of treatment does not require that privileges be provided members of the two races in the same place. The state may choose the method by which equality is maintained." Other Maryland cases to the same effect are Hart v. State, 100 Md. 595, 60 A. 457; State v. Jenkins, 124 Md. 376, 92 A. 773, and Durkee v. Murphy, 181 Md. 259, 29 A.2d 253.[3]

■ Any consideration of this legal principle should sharply distinguish between what constitutes the proper exercise of constitutional *power* on the one hand, and what is justifiable *policy* on the other. The question of constitutional power is for the courts, and is the only matter here to be considered. The proper policy, that is, whether segregation should be required or not, is for the legislative department of the State or for the executive departments operating under legislative authority.

The principal argument submitted by counsel for the plaintiffs against the legal doctrine that segregation is within the police power of the separate States is based on the view now earnestly advanced that segregation, by reason of changes in economic and other national conditions, since 1896 when Plessy v. Ferguson was decided, has become *outmoded*. This argument seems to me to be addressed to the wisdom of State policy rather than to the existence of State power.[4] The argument is sought to be fortified by the contention that the doctrine of Plessy v. Ferguson has been somewhat weakened or impaired by subsequent decisions of the Supreme Court;[5] but I am not persuaded that the contention is correct as it is very clear that the doctrine of Plessy v. Ferguson has never been in fact repudiated by the Supreme Court, nor, so far as I have been able to ascertain, is the present contention supported by any judicial decision, federal or state. On the contrary there are several very recent decisions expressly holding that the doctrine of Plessy v. Ferguson is still constitutional law. Certainly that has been the understanding of the Judges of this court as expressed in very recent cases. Mills v. Lowndes, D.C., 26 F.Supp. 792, 798; Henderson v. United States, D.C.Md.1945, 63 F.Supp. 906; Henderson v. Interstate Commerce Commission, D.C. Md.1948, 80 F.Supp. 32, now pending on appeal to the Supreme Court.[6] Even more important is the very recent opinion of the Court of Appeals of the Fourth Circuit by Judge Dobie (imperative authority for me) in Corbin v. County School Board, 177 F.2d 924, affirming District Judge Barksdale's opinion in 84 F.Supp. 253, 254, 255; and to the same effect is Day v. Atlantic Greyhound Corp., 4 Cir., 1948, 171 F.2d 59, 60, where the court upheld a reasonable regulation of an interstate carrier with respect to segregation of races. In

---

3. See also Pressman v. Mayor & City Council of Baltimore, Baltimore Daily Record, Dec. 17, 1949.

4. See Judge Paul's discussion of the recent segregation case of Simmons v. Atlantic Greyhound Corp. D.C.W.D.Va., 75 F.Supp. 166, 175.

5. Cases especially referred to in this connection are Buchanan v. Warley, 1917, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, L.R.A.1918C, 210, Ann.Cas.1918A, 1201; McCabe v. Atchison, T. & S. F. R. Co., 1914, 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169; Mitchell v. United States, 1941, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201; State of Missouri ex rel. Gaines v. Canada, 1938, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Torao Takahashi v. Fish & Game Comm., 1948, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478; Oyama v. California, 1948, 332 U.S. 633, 640, 646, 68 S.Ct. 269, 92 L.Ed. 249; and Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441; Hague v. C. I. O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

6. In the second Henderson case (80 F.Supp. 32, 40) Circuit Judge Soper's dissent was prefaced with the remark that—"It is true that segregation of the races is lawful provided 'substantial equality of treatment of persons traveling under like conditions' is accorded." See also Nash v. Air Terminal Services, D.C., Va., 85 F.Supp. 545, Judge Bryan; and Carter v. School Board, D.C.E.D.Va., 87 F.Supp. 745.

the opinion it was said: "This question, however, is not open to debate in this court. It is foreclosed by binding decisions of the Supreme Court which hold that an interstate carrier has a right to establish rules and regulations which require white and colored passengers to occupy separate accommodations provided there is no discrimination in the arrangement." However, where the separate facilities afforded by the State have been found not substantially equal, this court has not hesitated to enjoin State officials from unconstitutional discrimination. Mills v. Lowndes, D.C.Md.1939, 26 F.Supp. 792; Law v. Mayor & City Council of Baltimore, D.C.Md.1948, 78 F.Supp. 346; Mills v. Board of Education of Anne Arundel County, D.C., 30 F.Supp. 245.

As this case will be appealed it may be helpful to briefly analyze the pleadings and procedure by which the question to be tested is presented. The procedure is perhaps a little unusual because, while arising on a motion to dismiss the complaint or for judgment on the pleadings, the facts are to be found in a rather lengthy stipulation which in effect, for the purposes of the decision, limit and control, if they do not contradict, the rather general and somewhat vague averments in the five separate counts of the complaint.

The complainants in the second amended complaint are 21 individuals, some adults and some minors, some white and some Negroes, who sue the seven members of the Board of Recreation and Parks of the City of Baltimore in their official capacity as a Board, and also the Municipal Corporation, the Mayor and City Council of Baltimore. Robert Garrett and four other members of the Board, constituting a majority, are sued both individually and offi-

cially. R. Brooke Maxwell, Director of the Board, and Charles A. Hook, Superintendent, and other subordinate officials are also joined as defendants but their presence is unimportant in connection with the question presented. The object of the complaint is to obtain damages in the alleged amount of $500,000, and also separately an injunction against the Board to restrain it from enforcing a rule or practice which it had heretofore officially adopted providing for segregation of the races in athletic activities, including the sports of golf, basketball and tennis, in the public parks and places subject to the control of the Board. The jurisdiction of the court is based on certain sections of the Civil Rights Act, 8 U.S.C.A. particularly sections 43 and 47.[7]

The complaint embraces five separate counts. The first three set forth complaints by separate and different groups of the 21 plaintiffs, each seeking large monetary damages for alleged deprivation of equal rights in public facilities. The fourth and fifth counts are based on the conspiracy provision in section 47 of title 8 U.S.C.A., and seek damages in large amount in favor of all 21 plaintiffs jointly against the several defendants jointly based on the more specific incidents set out in the first three counts. More particularly the first count seeks damages on behalf of two white persons, and two Negroes, for the refusal of the defendants to permit them to play basketball as a team consisting of both whites and Negroes. In the second count another separate and different group of the plaintiffs, 14 being named, some white and some Negroes, demand damages for being refused permission to continue playing interracial tennis on courts in Druid Hill Park, and being forcibly ejected therefrom in consequence of

7. Section 43 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." And section 47 in part imposes liability for damages on two or more persons who conspire to injure persons who are lawfully enforcing or attempting to enforce the right of any person or class of persons to the equal protection of the laws.

their refusal to obey the order of the Park Police to desist by reason of the policy of the Board against interracial tennis in the public parks.[8] In the third count damages are claimed by one of the plaintiffs, a white man, for being refused permission to play golf on the Clifton Park Municipal Golf Course on a particular day on which, by order of the Board, the course was reserved exclusively for use by Negro players; and in the same count another plaintiff, a Negro, likewise demands damages for similar refusal to be allowed to play golf on the same golf course but on a different day on which, by order of the Board, the particular golf course was reserved for the use of white players only.

All defendants answered the original complaint and all except Baltimore City likewise answered the first amended complaint, while the City moved to dismiss it on the ground that the complaint did not negative the existence of equality of treatment. In addition the defendants Robert Garrett and four other members of the Board, constituting the majority, filed a motion for summary judgment supported by elaborate affidavits affirmatively stating that with respect to all the athletic facilities referred to in the amended complaint, the facilities afforded the separate races were substantially equal. Thereafter, with leave, the plaintiffs filed a second amended complaint on the condition that the defendants' motion for summary judgment previously filed should likewise apply to the second amended complaint. The City again moved to dismiss the second amended complaint. Shortly thereafter counsel agreed to have the substantial question of law herein referred to presented by a very carefully prepared statement of facts filed in the case.

Despite its length (20 typewritten pages) and detail it is unnecessary in this case to meticulously analyze or appraise the facts in the stipulation which seems to have been prepared with sedulous care to present only the particular question with regard to segregation, putting aside any possible inferences of disadvantage or prejudice to either party with respect to the facts stated insofar as they may be important at any other possible stage of this case or in any other judicial proceeding.

Throughout the case it is important to bear in mind the very restricted scope of inquiry which this federal court has in this particular case because its jurisdiction is based only on sections 43 and 47 of title 8 U.S.C.A., the gist of which is to give a federal right of action for the intentional deprivation of, or interference with the exercise of, federal constitutional or statutory rights. See Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330; Lyons v. Weltmer, 4 Cir., 174 F.2d 473. Cf. Burt v. City of New York, 2 Cir., 156 F.2d 791. The only federal right here involved is the alleged right of the plaintiffs to participate in interracial athletic activities under the control of the Park Board; that is, anti-segregation. This, therefore, is the only issue in the case. If segregation, with equal facilities, is within the constitutional police power of the State, acting directly or through its agencies with legislative authority, then the complaint in this case does not state a cause of action either in law or in equity against any of the defendants. It may be assumed that the second count of the complaint on its face states a cause of action, not completely negatived by the agreed statement of facts, which would be cognizable in a court having general common law jurisdiction of actions for assault, false arrest or malicious prosecution; but there can be no such jurisdiction here because there

8. This appears to be the same incident which was made the basis of a prosecution in the Criminal Court of Baltimore City, against some of these plaintiffs, resulting in a conviction of conspiracy to disturb the public peace. The opinion of the Supreme Bench of Baltimore City by Judge Tucker in the case of Stanley Askin and others, is reported in the Baltimore Daily Record for March 7, 1949. On appeal the judgment of the Criminal Court of Baltimore was affirmed by the Maryland Court of Appeals, Winkler v. State, 69 A.2d 674. The Court of Appeals did not find it necessary to consider the validity of the policy of the Board.

is no diversity of citizenship and no jurisdiction except under the special federal statutes. Therefore the really important and controlling facts may be briefly stated.

Among the athletic facilities provided and controlled by the Board are basketball courts, tennis courts and golf courses. There is no statute of the State or ordinance of the City which specifically prohibits members of the Negro and white races from engaging together in these athletic activities or using the facilities provided and supervised by the Board of Recreation and Parks; but it has long been the consistent policy and practice of the present Board and also of its predecessors to require segregation of the races in such activities. More specifically, at a meeting held January 20, 1948, by a majority vote, the Board passed a resolution reading "That the policy of the Department of Recreation and Parks of not allowing interracial athletic

activities be continued until further study by this Board." [9]

It appears that while this practice of the Board in general refusing to permit interracial use of certain athletic activities under its control was known or made known at the time to the complainants, the Board had not formulated or publicized any specific rule or regulation upon the subject, except with respect to use of the municipal golf course. Its failure to do so could have raised the question as to the regularity or validity of its exercise of the rule making power, which might have been of importance in some other case involving the subject matter as, for instance, a bill to enjoin the enforcement of the rule by a particular plaintiff who challenged the valid existence of such a rule; or the point may have been a good defense to a prosecution for violation of a rule which existed only in such general terms. [10]

9. The agreed statement of facts lists a number of real or apparent exceptions to the consistency of the general policy and practice of the Board and its predecessors, but viewing the agreed statement as a whole and interpreting it in accordance with my understanding of the purpose of counsel in presenting the substantial law question, I consider the exceptions to be really immaterial. Instances of some of the exceptions noted are as follows: During the war years and pending reconstruction and improvement of the Carroll Park Golf Course theretofore reserved exclusively for Negro golf players (see Durkee v. Murphy, 181 Md. 259, 29 A.2d 253, and Law v. Mayor & City Council of Baltimore, D.C., 78 F.Supp. 346) they were allowed to play on other municipal golf courses. The Baltimore Stadium is under the control of the Board and at times has been leased to amateur or professional baseball or football clubs and occasionally a visiting baseball or football team has had a Negro member. Also during the recent war some Cricket matches were played in Druid Hill Park between teams from crews of British ships and the local team consisting mainly of Negro players, but with a few white players. This fact is stated to have been known to the Board of Recreation and Parks but it issued no permits therefor. Certain other instances of interracial athletic activities occurring in Baltimore City, not under the particular jurisdiction of the Park Board, are also mentioned.

10. The absence of a formally adopted specific rule with respect to interracial tennis in Druid Hill Park was apparently an important consideration in the opinion of the dissenting Judges of the Supreme Bench of Baltimore City and of Judge Markell in the Court of Appeals of Maryland in the case of State of Maryland v. Stanley Askin and others above mentioned. But in the course of the majority opinion of the Supreme Bench by Judge Tucker it was said: "The authority of the Park Board to make a rule prohibiting interracial tennis in the public parks of Baltimore City is firmly supported by decisions of the Court of Appeals in Durkee v. Murphy, 181 Md. 259, 265–266, 29 A.2d 253, and Williams v. Zimmerman, 172 Md. 563, 567, 192 A. 353. The Board had the power to provide some tennis courts for Negroes and others for whites, and to enforce the policy of segregation in the use thereof. The defendants Askin and Buchman, were fully advised of the Board's policy in this respect; and in our opinion it is immaterial that it was not printed in a book of rules, or that it may not have been wholly consistent with the policy followed in the use of other sports facilities."

But in this particular case there is no issue of fact as to the existence of the practice or requirement of the Board against interracial athletic activities. The complaint does not question the existence of the rule but on the contrary asserts it and denies its constitutional validity. And it is this later denial which makes the issue of law in this case. In fact it is only by reason of the rule that this court has jurisdiction in the case under sections 43 and 47 of title 8 U.S.C.A.

An important feature of the agreed statement of facts is that, for' purposes of the question now before the court, the complainants made no contention that the facilities afforded for the separate races are not substantially equal. This being so there can be no question but that under Maryland law the Park Board did have the legal authority to require segregation of the races. In Durkee v. Murphy, 181 Md. 259, 265, 29 A.2d 253, 256, (a case involving segregation of white and Negro players on municipal golf courses) Chief Judge Bond, after referring to the relevant sections of the Baltimore City Charter of 1938 (not substantially different from those of the present Charter of 1946) which conferred powers upon the Park Board to make rules and regulations, said: "And these provisions must, we conclude, be construed to vest in the Board the power to assign the golf courses to the use of the one race and the other in an effort to avoid any conflict which might arise from racial antipathies, for that is a common need to be faced in regulation of public facilities in Maryland, and must be implied in any delegation of power to control and regulate. There can be no question that, unreasonable as such antipathies may be, they are prominent sources of conflict, and are always to be reckoned with. Many statutory provisions recognize this need, and the fact needs no illustration. 'Separation of the races is normal treatment in this state.' Williams v. Zimmerman, 172 Md. 563, 567, 192 A. 353, 355. No additional ordinance was required therefore to authorize the Board to apply this normal treatment; the authority would be an implied incident of the power expressly given."

I find no material issue of fact in the case presented. With respect to the complainants' claim for monetary damages, the facts stipulated do not warrant the inference that the motivation of the majority members of the Board in enforcing its general practice and policy was arbitrary, capricious or dictated by other than honest conception of the public interest involved. If it be assumed that the policy was unnecessary or unwise and the result of mistaken judgment, it was nevertheless official action authorized by legislation, and as a matter of law there was no legal liability therefor if the legislative authority so delegated was within the federal constitutional authority of the State of Maryland under its police power. That being so, it cannot be maintained that the action was taken merely under "color" of authority. Nor did such honest official action of the majority of the Board constitute a conspiracy to injure the plaintiffs within the meaning of the federal statutes. As to the defendants constituting subordinate officials of the Board, there is nothing in the statement of facts to indicate that they were acting other than in accordance with superior authority, and without personal animus or intentional discrimination.

It is suggested by counsel for the plaintiffs that this case differs from the typical situation in which one or more Negroes alone are seeking to enforce equality of treatment, because here they are joined by some whites who insist upon the right to participate in interracial sports. In my opinion the attempted distinction is unsound. If the Board's requirement as to segregation was valid, it was equally binding upon whites and Negroes. Their mutual desire to participate together in athletic activities might be a proper consideration for the Board in formulating its policy but cannot of itself affect the power to make the regulation.

The plaintiffs' real complaint in this case is their dissatisfaction with the constitutional doctrine of the Supreme Court as announced in Plessy v. Ferguson, and many subsequent cases, which continues to be the existing law as expressed in the recent opinions of the Court of Appeals

for this Circuit. In view of this imperative authority it follows very clearly that this court must apply that law in holding that segregation is within the police power of the State; which has been duly delegated in this respect to and exercised by the Board of Recreation and Parks of Baltimore City. The earnest contention of plaintiffs' counsel that the doctrine is now outmoded is, as I have heretofore stated, an argument addressed to policy rather than power. Treated as policy the decision may vary in the States respectively and from time to time; but if the constitutional power is denied, then the rule becomes fixed and uniform for each and all of the 48 States at all times unless and until constitutionally changed.

Subsequent to the filing of the agreed statement of facts counsel have taken certain depositions of witnesses regarding alleged recently arising public disorder consequent upon the temporary abandonment of the policy of segregation in swimming pools in St. Louis, Missouri, and other places. The plaintiffs object to the admissibility of such depositions as irrelevant. I rule that they are inadmissible. They can have no relevancy with regard to the existence of the constitutional power. Possibly they might have some significance with respect to the policy as to segregation in the particular jurisdiction. But, as I have said, this court cannot deal with the propriety of the policy either in this jurisdiction or elsewhere, but only with the question of constitutional power.

I conclude that the motion for judgment on the pleadings must be granted in favor of the defendants. As a matter of strict procedure there might possibly be a distinction between the motion to dismiss and the motion for summary judgment but I infer that counsel for the plaintiffs do not desire to make such a distinction in the particular case. I am not unmindful of the general undesirability of deciding important constitutional questions, if at all debatable, in a summary procedural manner; and I am also aware of the fact that the Supreme Court now has pending before it certain cases which counsel state may involve a further consideration by the Court of the constitutional doctrine here involved. In fact I suggested to counsel in this case the desirability of withholding the argument or disposition of this case pending decisions of the Supreme Court in the cases referred to; but nevertheless counsel for the plaintiffs have asked for a decision here in due course and without awaiting further legal developments. I think they are entitled to have a prompt decision. For these reasons the motions of the defendants will be granted, and counsel are requested to submit the appropriate orders in due course.