**LAW v. MAYOR AND CITY COUNCIL OF BALTIMORE et al.**
Civ. A.
No. 3837.

District Court, D. Maryland.
June 18, 1948.

Charles H. Houston and Joseph C. Waddy, both of Washington, D. C., and W. A.

C. Hughes, Jr., of Baltimore, Md., for plaintiff.

Thomas N. Biddoson, City Sol., and Allen A. Davis, Asst. City Sol., both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The plaintiff in this case sues for enforcement of civil rights arising from the 14th Amendment which provides that no State shall deny to any person the equal protection of the laws. The plaintiff is an experienced Negro golfer who complains that he and others of his color have not been accorded equal facilities with white persons for the pastime of golf. The answer of the City of Baltimore maintains that, in accordance with the general Maryland policy of segregation of the races, it has provided one municipal golf course exclusively for the use of Negroes which, it is said, considering the much smaller number of that race playing golf than the number of white golfers, affords substantially equal facilities to the Negroes. From the evidence in the case I make the following findings of fact.

Baltimore City maintains four public golf courses under the general charge of the Board of Recreation and Parks. Three of these golf courses are reserved for the use of white persons exclusive of Negroes, and the fourth is reserved exclusively for the use of Negroes. On August 26, 1947, the plaintiff formally applied to the Board for permission to play on one or more of the golf courses reserved for white persons. He had a hearing and on a consideration of the matter the Board by a majority vote denied his application on October 31, 1947. This suit resulted.

The three courses reserved for white persons are Mt. Pleasant Golf Course situated partly in Baltimore City and partly in Baltimore County in the general vicinity of the Herring Run Valley in the northeastern section of the City, and still in a predominantly undeveloped district. It is an 18-hole course of modern construction with attractive surrounding landscape, occupying about 140 acres of ground and of more than 6000 yards in length for the whole course. Another 18-hole golf course maintained by the City is in Clifton Park, a tract of several hundred acres originally constituting the country estate of Johns Hopkins, and situated on the Harford Road about a mile north of North Avenue which, many years ago, was the northern boundary of the City. The golf course constitutes a part of a typical large City Park. Still another 18-hole golf course is known as Hillsdale in Forest Park in the northwestern part of the City and in a general suburban district. The fourth golf course, the one reserved for Negroes, is in Carroll Park. It is only a 9-hole course situated in the southwestern part of the City in a general commercial and industrial area.

A very similar case was considered by the Maryland State Courts in 1942, Durkee v. Murphy, 181 Md. 259, 29 A.2d 253, 255. In that case a Negro golfer brought a mandamus suit to require the Board of Park Commissioners to permit him to play on any of the three City golf courses reserved for white persons. Under an instruction given by the trial judge, the jury in effect by their verdict found there was a substantial inequality in accommodation in Carroll Park for the Negro players. On appeal the judgment was reversed for errors in procedure. In the opinion it was stated that for constitutional purposes, golf should not be treated as a mere incident of recreational facilities, but a facility in itself from which Negroes cannot be excluded without having other substantially equal provision made for them. It was, however, further pointed out that it was lawful and proper, in view of the general Maryland policy of segregation for the Board to provide separate golf courses for Negroes and white persons, but if so the facilities for the colored race must be substantially equal to those afforded other classes.

When this case was tried in 1942 it appears quite clearly that the Carroll Park course did not afford facilities for golfers substantially equal to any of the three other City courses. It was described in the opinion of the Court of Appeals as follows: "The Carroll Park course, one of nine holes, covers a smaller acreage than the other courses, has shorter fairways, has sand greens which are not so well constructed as those on well-known courses

elsewhere, has metal discs marking the holes rather than flags, has no accommodations for washing balls, and has no golf professional present. There was evidence on behalf of the City, however, that professionals are not employed by it anywhere, and are present on other city courses, where there are more players, only of their own initiative, to profit by fees that players are willing to pay for their services. The club house at Carroll Park is not a subject of any complaint. The other City courses are of eighteen holes each, with turf greens, and longer fairways. They have two alternating tees for each hole, whereas the Carroll Park course has one. It was testified for the City, further, that of the rounds played on the four courses 90 per cent. are by white players, 10 by Negro players, and that if the Negroes are to be taken as playing two rounds on the nine hole course, they number about 5 per cent. of all players; and the longer courses were provided with a view to accommodating the greater number of players."

The result of the litigation in the case was that the Board apparently recognized the inadequacy of the Carroll Park golf course and, after what appears to have been an informal understanding with the Association of Colored Golfers who frequently used Carroll Park, the Board agreed that substantial improvement would be made in the course and that until this was done Negro players would be permitted to use one or more of the other City courses. This practice was followed for two years during the rebuilding of the Carroll Park course. From a preponderance of the evidence in this case I find that it has been very materially improved as a 9-hole course with good turf in the fairways, fairly well laid out as to the construction of the 9 holes with well kept and adequate putting greens, and with no congestion of the number of players who use the course. It also, as the photographs in evidence will show, has an adequate club house with accommodations for the two sexes. But owing to the comparatively small number of players, the patronage is not sufficient to attract a professional golf instructor. The other City courses have such a golf professional but, while ap-

pointed by the Board, his compensation comes entirely from the patronage of those who use the courses. Separately considered, Carroll Park is now a reasonably good 9-hole course but it is situated in an unattractive part of the City for a golf course, being bordered by an active industrial branch of the B. and O. Railroad and surrounded by commerce and industry rather than in a suburban or country district. It has little attraction from the landscape point of view. The land, while not completely level, has a comparatively uniform terrain and does not present the attractive varied conditions of ground or landscaping which exist to a much greater extent in the other municipal courses.

The evidence further shows that of the 4,000 or more golf courses in the United States about half are only nine-hole courses; but there is no evidence, with respect to municipal courses alone, how many are 9-hole courses and how many 18-hole courses; nor is there any evidence with respect to any other municipality where Negroes are limited to a smaller and less attractive course than is provided for other classes of citizens. In this case the City justifies the present situation largely on the ground of the general Maryland policy of segregation of the races and also on the ground that, considering the comparatively small number of colored players, the facilities of Carroll Park must fairly be considered adequate for Negro golfers.

I find also that the Board has in good faith carried out its informal understanding with certain Negro golf players following the Maryland case just mentioned; but it does not appear that the plaintiff was a party to the agreement nor that he is in any way bound by it or estopped to assert his constitutional rights in this case.

The evidence is conflicting with respect to the relative quality of the Carroll Park golf course when compared with the other City courses. In a few respects the Carroll Park course is equal or possibly even superior to the other golf courses. It is more readily accessible from the center of the City by public transportation than some of the other courses and is practically never congested with the number of play-

ers using it. Contrasted with this latter consideration the three City white courses are greatly congested on week-ends, it being not unusual for a player to wait at the first tee two or more hours before he can find an opportunity to play. The number of Negro golfers in Baltimore is said to be less than 100; while the white players number 5,000 or more.

But in many other respects the white courses are greatly superior to the Carroll Park course, which is only a 9-hole course while all the others are of 18 holes. For an experienced golfer with reasonably vigorous physical activity, it is difficult to say that a 9-hole golf course is of substantial equality with an 18-hole course, if other qualities are otherwise fairly comparable. One of the pleasurable features of golf consists in the variety of the type of play afforded by varied conditions of ground on an 18-hole course. Most golfers desire to play at least 18 holes at one time. Two successive rounds on a 9-hole course tend to monotony rather than to variety of the types of play required for the use of different clubs. Carroll Park, while not entirely a level course, affords much less variety of terrain than the other municipal courses. Another pleasurable feature of golf lies in the surrounding landscape and in this respect a golf course such as Hillsdale or even Clifton Park is greatly superior to Carroll Park which is situated in a generally industrial and commercial district. While Carroll Park affords generally satisfactory conditions for the beginner at the game and has adequate facilities for learning many of the strokes generally used in golf, it cannot be said to afford advantages for golfers generally who wish to progress in proficiency in the game and to enjoy it as an outdoor recreation. The superiority of the white golf courses does not depend merely upon the size of the course but on the quality of the recreation afforded thereby. Furthermore, Negro golfers are restricted to one 9-hole course while the white golfers have the opportunity of selecting any one of three courses of somewhat different types.

Among outdoor sports golf is a unique game in many of its characteristics. While ordinarily played in competition with others the success of the individual player is dependent very largely upon his own personal ability, not affected directly by opposition from his opponents, as in lawn tennis, baseball or football. Thus successful play by the golfer is largely affected by his own personal concentration, absence of distraction and by his personal temperament and poise. And these faculties in turn are often affected by surrounding conditions. They are helped by quiet and pleasurable surrounding conditions of landscaping and hindered by noise or other distracting influences. The game as recreation for experienced golfers requires more than merely a sufficient surface of ground covered with grass. To a much greater extent than in baseball or football, it is made or marred by more collateral and possibly aesthetic conditions. While a beginner at golf might be satisfied with a 9-hole course located in a surrounding industrial section, the reasonably experienced golfer requires for enjoyment of the game conditions of play which contribute in other ways so largely to the game. The evidence in this case indicates that the plaintiff himself and others of his race are experienced golfers whose reasonable enjoyment of the game is not gratified by the facilities at Carroll Park, in comparison with other and superior municipal courses. As he has a personal constitutional right to substantially equal facilities it is not permissible to say that he must be satisfied with the inferior golf course because there are so comparatively few of his race who are qualified to appreciate and enjoy the opportunity of the game afforded by the better golf courses.

Weighing the evidence as a whole I feel obliged to find as a fact from a preponderance thereof that there is not substantial equality of facilities afforded by the City to the Negro golf players. The superiority of the white golf courses over that at Carroll Park is roughly comparable, in the field of railroad transportation, to that of the Pullman car with the day coach. See McCabe v. Atchison, Topeka & Santa Fe R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169.

■ It is unnecessary to discuss the constitutional question involved herein at any great length, because it has frequently

heretofore and indeed quite recently been before the Court of Appeals of this Circuit and the Supreme Court of the United States. Rice v. Elmore, 4 Cir., 165 F.2d 387; Alston v. School Board of City of Norfolk, 4 Cir., 112 F.2d 992, 130 A.L.R. 1506. The action of the City is in accordance with the recently amended Baltimore City Charter and clearly constitutes governmental action and as the City is an arm of the State government, it constitutes State action. It is now well settled that when government does provide public facilities they, or those of substantial equal character, must be afforded to all persons alike. Kerr v. Enoch Pratt Free Library, 4 Cir., 149 F.2d 212; State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; University of Maryland v. Murray, 169 Md. 478, 182 A. 590, 103 A.L.R. 706. McCabe v. Atchison, Topeka & Santa Fe R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169. It may also be noted that on August 26, 1947, when the plaintiff applied to the Board for permission to play on municipal golf courses other than Carroll Park, and through October 31, 1947, the Code of Rules and Regulations promulgated by the Board for the use of public parks provided: "Rule No. 1 The public parks being the property of the people shall be open to all persons upon *absolutely equal terms;* and it shall be the duty of every person to see that the Rules and Regulations herewith set forth are observed." (Italics supplied.) But after October 31, 1947, the rules and regulations have been amended, effective May 1, 1948, and Rule No. 1 as above quoted has been omitted. The fact that the Carroll Park golf course was improved in accordance with an informal understanding with certain other colored golfers is, of course, not binding on the plaintiff in this case and constitutes no estoppel to him. The right asserted by him is his personal constitutional right. Shelley v. Kraemer, 1948, 68 S.Ct. 836; McCabe v. Atchison, Topeka & Santa Fe R. Co., supra.

The basis for the action by the majority of the Board in the instant case was put largely on the ground that the Carroll Park golf course affords Negroes of Baltimore City desiring to play golf substantially equal facilities to those accorded white citizens, *considering the number of players using each course.* A similar contention was rejected as unsound by the Supreme Court in McCabe v. Atchison, Topeka & Santa Fe, supra, with respect to failure to provide Pullman and dining car service for Negro passengers, where the court said [235 U.S. 151, 35 S.Ct. 71]: "This argument with respect to the volume of traffic seems to us to be without merit. It makes the constitutional right depend upon the number of persons who may be discriminated against, whereas the essence of the constitutional right is that it is a personal one. Whether or not particular facilities shall be provided may doubtless be conditioned upon there being a reasonable demand therefor; but, if the facilities are provided, substantial equality of treatment of persons traveling under like conditions cannot be refused. It is the individual who is entitled to the equal protection of the laws, and if he is denied by a common carrier, acting in the matter under the authority of a state law, a facility or convenience in the course of his journey, which under substantially the same circumstances, is furnished to another traveler, he may properly complain that his constitutional privilege has been invaded."

See also Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201; Missouri v. Canada, supra.

The evidence in this case shows that the public golf courses are authorized and operated by the City not at a profit but apparently at a loss. The Mt. Pleasant course, the best and most attractive of all the courses, apparently operates at a small profit, and that at Clifton Park and Forest Park just about break even or sustain a slight loss; while Carroll Park by reason of the much smaller patronage and consequent smaller amount of greens fees operates under present conditions at a loss of several thousand dollars a year. The City is under no legal obligation to provide golfing facilities as a particular feature of its whole park services and presumably may constitutionally and lawfully discontinue golfing facilities as a recreation pleasure at any time. Nor is it meant to rule that it is not within the power of the

Board in its judgment, pursuant to the general policy of segregation, to establish separate golf courses for white and colored citizens. But so long as the City furnishes golfing facilities the quality must be substantially equivalent for the two races.

 As I have indicated, I think the Board has endeavored in entire good faith to provide for the situation according to their best judgment. I do not find that they have acted arbitrarily or capriciously in a factual sense. Counsel for the City contends vigorously that as the action of the majority of the Board was not arbitrary and capricious but represented honest and fairly exercised judgment with respect to the question of fact as to the substantial equality of the respective golf courses, the court ought not to substitute its finding of fact for that of the Board. This rule is a generally prevailing one with respect to the scope of judicial review from discretionary findings of fact of administrative boards generally when based on substantial evidence. But it is an equally well settled legal doctrine that when a federal court is called upon to apply personal constitutional rights it must determine the facts for itself on the evidence presented. As I have found the fact to be that Carroll Park is not substantially equal to the other municipal golf courses it necessarily follows as a conclusion of law that the plaintiff in this case is entitled to a judgment to the effect that the action of the Board, equivalent to the action of the State, has denied him the equal protection of the laws contrary to the 14th Amendment.

The result of this case may probably create a difficult problem for the Board of Recreation and Parks. It is not the duty nor the function of the court, but is the primary province of the Board, to determine what shall be done in the future in order to afford equal benefits to Negro golfers on municipal golf courses in Baltimore City. The court cannot undertake to adjudicate possibilities in advance of actualities. Possibly the Board may find a fair solution for the future in continuing to reserve Carroll Park exclusively for Negro golfers, but also affording them the opportunity to play at Mt. Pleasant or other municipal courses during certain hours of the day or on one or more days of the week reserved for them exclusively. And if this should be the course found practicable and desirable, it would seem relevant for the Board to consider for that purpose in apportioning time, the presently relatively small number of Negro golfers.

The plaintiff has prayed for not only an injunction to enforce his constitutional rights, but also for damages. I do not find that he has sustained any pecuniary damages.

Counsel may present the appropriate form of order in due course.