### SWEENEY et al. v. CITY OF LOUISVILLE et al.

Civ. No. 1723.

United States District Court
W. D. Kentucky, at Louisville.
Sept. 14, 1951.

526

Benjamin F. Shobe, James A. Crumlin, Louisville, Ky., Robert L. Carter, New York City, for plaintiffs.

Gilbert Burnett, City Atty., Robert W. Meagher, Asst. City Atty., Louisville, Ky., for City of Louisville and T. Byrne Morgan.

Donald Q. Taylor, Louisville, Ky., for Louisville Park Theatrical Ass'n, Inc.

SHELBOURNE, Chief Judge.

This action was filed July 28, 1949, by P. O. Sweeney, Mona Carroll, an infant suing by her Father and next friend Alfred M. Carroll and James W. Muir, plaintiffs, against City of Louisville, T. Byrne Mor-

gan, Director of Parks and Recreation for the City of Louisville and Louisville Park Theatrical Association, a corporation, defendants.

Jurisdiction in the complaint, was invoked under Sections 1331 and 1343, subsection (3) Title 28, and Sections 41 and 43 of Title 8 United States Code Annotated, to obtain a declaration of rights under the authority of Section 2201 of Title 28 United States Code.

It was alleged that the three plaintiffs were citizens, residents and taxpayers of the City of Louisville and entitled under the Constitution and laws of the United States to the use of the recreational, athletic, swimming, golf, park and entertainment facilities maintained, owned or operated in whole or in part by the City of Louisville by the expenditure of public funds.

All of the plaintiffs are Negroes and bring this suit in their own behalf and for the use and benefit of all other persons, citizens and residents and taxpayers of the City of Louisville similarly situated and affected, as plaintiffs allege they are, pursuant to Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.

It was alleged that at all times referred to by the plaintiffs, the City of Louisville, its Director of Parks and Recreation, T. Byrne Morgan, had promulgated and enforced a policy, custom, usage and practice of limiting plaintiffs and all other Negro citizens to the use of certain parks, playgrounds, athletic fields, and swimming pools and denying them admission to other parks, playgrounds, athletic fields, swimming pools and golf courses, solely because of their race and color; that the City of Louisville, its Director of Parks and Recreation, maintain and operate twenty-three parks totaling approximately 2,267.5 acres advantageously located in the City of Louisville, equipped with five golf courses, an amphitheater, pavilions, provisions for winter sports, a lake for fishing, to all of which plaintiffs and the class represented by them were denied admission. That on or about the 21st day of July 1949, plaintiff P. O. Sweeney, offering to pay all uniform charges and fees for the use of public golf courses, applied in a proper and lawful

527

manner for permission to play golf on the Cherokee golf course, located in Cherokee park.

Notwithstanding his offer to comply with all of the reasonable rules and regulations applicable to persons using the golf course, he was arbitrarily and illegally denied permission to play, being informed by the defendant Morgan that a policy and practice prevailed which limited Negroes to the use of designated parks whereupon no golf course was maintained.

Plaintiff, Mona Carroll, applied for permission to fish in the Lake where white citizens were permitted to fish and was arbitrarily and illegally denied admission to the Park, because of her race and color, and alleged that no lake and no fishing facilities were maintained in any of the parks to which Negroes were admitted.

The plaintiff James W. Muir alleged that on or about the 22nd day of July 1949, he sought admission, and tendered the requisite admission charge, to the Amphitheatre maintained by the defendant City of Louisville in Iroquois Park and was denied admission because of the custom, practice and policy complained about by all the plaintiffs.

Plaintiffs sought a declaration of rights, declaring the policy, custom, usage and practice of excluding Negroes from the amusement and recreational facilities described in the complaint and located in the parks alleged to be owned and maintained by the City, to be in violation of the Fourteenth Amendment and therefore unconstitutional and void and sought an injunction restraining and enjoining defendants and each of them from continuing in force and practice the alleged discrimination.

Various motions were interposed by the defendants and on April 10, 1950, the complaint was amended and on May 22, 1950, the City of Louisville and defendant T. Byrne Morgan, filed answer denying each and every allegation of the complaint except those relating to the corporate existence of the City of Louisville and those relating to the fact that T. Byrne Morgan was at the time, the duly authorized and acting Director of Parks and Recreation for the City of Louisville.

Affirmatively, these defendants plead in bar of the right of plaintiffs to maintain this action, that on January 5, 1948, a judgment was entered dismissing a petition, as failing to state a cause of action, then pending in the Jefferson Circuit Court, Chancery Branch, styled "Dr. P. O. Sweeney v. City of Louisville et al", which was alleged to have been an action instituted by the same parties as plaintiffs and involving the same questions as presented in the present suit. An attested copy of the transcript of the Jefferson Circuit Court action was filed and made a part of the answer.

It was further alleged that an appeal was prosecuted from the judgment of the Jefferson Circuit Court to the Court of Appeals of Kentucky, wherein the judgment of the lower Court was affirmed by the Appellate Court February 22, 1949, as reported in 309 Ky. 465, 281 S.W.2d 30.

Defendants alleged that plaintiffs in the State Court action took the necessary steps to obtain a review of the decision of the Court of Appeals of Kentucky by the Supreme Court of the United States, but abandoned the effort to appeal, after securing an extension of time for the filing of a petition for writ of certiorari October 21, 1950.

Defendant, Louisville Park Theatrical Association, Inc., filed its answer, denying all of the material allegations of the complaint and amendment.

The case was tried to the Court without a jury on August 6, 1951.

The parties have stipulated substantially all of the facts, and at the trial, the City of Louisville introduced defendant, T. Byrne Morgan, Director of Parks and Recreation of the City of Louisville since 1942, William A. Moore, Superintendent of Recreation for the City for the past fourteen years and Colonel Carl Heustis, Chief of Police of the City of Louisville.

From the stipulation of facts filed by the parties and the testimony, the Court finds—

1. That the plaintiffs in this action are citizens and residents of Louisville, in the state of Kentucky; that defendant T. Byrne Morgan, as Director of Parks and Recreation for the City of Louisville, enforces

the policy adopted and continued in force, limiting the plaintiffs and other Negro citizens to the use of certain parks, playgrounds, athletic fields, and swimming pools, none of which contains a golf course, running streams, bridle paths, hiking trails, high peak lookout, or an Amphitheatre.

2. That the plaintiffs were denied admission to the parks set aside for the exclusive use of the white citizens solely and only on the ground that they are colored persons of African descent and of Negro blood, pursuant to regulations of the Director of Parks and Recreation, which regulations have been in force continuously since May 29, 1928.

3. That in 1938, the Board of Park Commissioners of the City of Louisville set aside a portion of Iroquois Park, the total acreage of which is 676.4 acres, on which was erected an Amphitheatre. The cost of the Amphitheatre was borne by the City of Louisville, except for a contribution of $5,000 made by the Louisville Park Theatrical Association, which is a non-stock, non-profit, private corporation, organized under the laws of Kentucky and which at its own expense entirely and under its sole direction and supervision, during a part of the summer season, it presents certain theatrical productions, for admission to which a fee is charged.

The conduct of the summer operas is pursuant to a written contract entered into between the corporations and the City of Louisville under date of May 14, 1947. In the years 1947, through 1951, the Louisville Park Theatrical Association has had the exclusive use of the Amphitheatre during the following periods—In 1947, July first through August tenth, In 1948, July fifth through August fourteenth, In 1949, July eleventh through August twenty-first, In 1950, July tenth through August sixth, and In 1951, July sixth through August nineteenth.

The Louisville Park Theatrical Association on July 23, 1949, did decline to sell plaintiff James W. Muir, a ticket for admission to the performance then in production at the Amphitheatre solely and only because of the fact that he was a Negro.

4. The contract of May 14, 1947, between the City of Louisville and the Association, in substance provides for the cancellation of a former agreement dated March 1, 1943, and leases the Amphitheatre for a period of five years to the Association, beginning with the season of 1947, and grants to the Association an exclusive right and privilege to use the Amphitheatre and its appurtenances in an area shown on a map of Iroquois Park, attached to the contract, on dates between May 1 and September 30, for the years 1947 through 1951, on such particular dates as the Association by written notice to the City shall designate, for the purpose of staging its program of dramatic, operatic, and athletic entertainments.

The Association was given the right to sell food and soft drinks, cigarettes and tobacco on the premises during the period of entertainment and was granted the right to charge any person seeking to attend the entertainment, an admission fee, provided the fees and charges were reasonable and consistent with the policy of providing wholesome entertainment at low cost.

The City agreed to maintain the structure and equipment known as the Amphitheatre in a clean condition; The Association, however, at its own cost, to furnish the labor and material to clean up the Amphitheatre after each performance and to pay the cost of electricity from May 1 to September 30 in each year the contract remained in force. It was required that on or before the first day of January 1948, and on the first day of each year thereafter, during the life of the agreement, the Association would furnish the City with a complete written statement of all entertainments produced by it or under its auspices at the Amphitheatre during the preceding season, the scale of admission fees charged the public for attending said entertainment, the number of persons attending same, and other information, in order to enable the City to determine whether the maintenance and operation of the Amphitheatre was contributing materially to the use and enjoyment of the Park System in Louisville.

The Association was required to furnish an audited statement of monies received from all sources and expenditures for all purposes made and incurred during the time covered in the preceding statement.

It was agreed that the Association would pay the City any profit realized from the operation, less $5,000, which the Association originally contributed to the cost of construction of the Amphitheatre, which amount the Association reserved the right to repay to the individuals who had contributed that fund.

With respect to the use of the Amphitheatre by persons or organizations other than the Association, the contract provided that the City would not lease the Amphitheatre to other persons or organizations between May 1 and September 30, any year for the purpose of permitting to be produced therein, any entertainment for which an admission fee or charge was made or from which it expected to derive a pecuniary profit, unless the person or organization seeking to so use said Amphitheatre, first apply for a sub-lease from the Association.

The City reserved the right to make and enforce rules and regulations providing for good order and for the preservation and protection of the Amphitheatre and the prevention of indecent or immoral exhibitions or entertainment calculated to create or incite racial or religious antagonism, and reserved the right, should it determine the operation of the Amphitheatre under the agreement not to be to the best interest of the public, to terminate the lease.

5. With respect to the former action between plaintiff P. O. Sweeney and the City and its Director of Parks and Recreation, it was stipulated that the former action was filed in the Jefferson Circuit Court, wherein the plaintiff sued for himself and all colored citizens of the City of Louisville similarly situated, and that the transcript of the State Court proceedings filed in this action truly and correctly reflect the proceedings had in the Jefferson Circuit Court and the judgment rendered in that action, and that the judgment of the Jefferson Circuit Court dismissing the petition was affirmed by the Court of Appeals February 22, 1949, the opinion of the Court being reported in 309 Ky. 465, 218 S.W.2d 30.

It was further stipulated that steps were taken by the plaintiff in the Court of Appeals of Kentucky, to obtain a review of that judgment by the Supreme Court of the United States by a writ of certiorari, but that plaintiff voluntarily abandoned the effort and the opinion and judgment of the Court of Appeals of Kentucky became final.

At the trial, defendant T. Byrne Morgan testified without contradiction that neither the plaintiffs in this action nor any of the class represented by them had since his incumbency as Director of Parks and Recreation made any request of this defendant or the Park Commissioners for the construction and operation of a golf course of fishing lake in any of the parks owned and maintained by the City of Louisville, for the exclusive use of Negroes; that during said period, no Negro or organization of Negro citizens of Louisville similar to the defendant Louisville Park Theatrical Association had requested use of the Amphitheatre in Iroquois Park, for the purpose of being permitted to exhibit therein entertainment of the kind and character exhibited therein by the Louisville Park Theatrical Association.

It was testified by Colonel Carl Heustis, an experienced Police Officer and Chief of Police of the City of Louisville, that in his opinion permitting white and Negro citizens to play golf, attend the theater, and use the fishing lake and amusement facilities together would present a serious police problem and create a menace to the safety and welfare of people generally attending said parks or using the facilities therein.

As presently staffed and equipped, it was the opinion of Colonel Heustis that the Police Department of Louisville was not adequate to cope with this situation.

## Conclusions of Law

I. This Court has jurisdiction of the parties and the subject matter involved in this action. U.S. Code, Title 28, Sections 1331 and 1343, subsection (3) and Title 8, Sections 41 and 43.

530

II. Plaintiffs have a right to obtain a declaratory judgment with respect to their rights to the recreational and entertainment facilities located within the public parks owned and maintained by the City of Louisville and arising out of the Fourteenth Amendment to the Federal Constitution. U.S. Code, Title 28, Section 2201.

III. Counsel for the defendants have earnestly and ably insisted that this Court is required to give full faith and credit to the judgment of the Jefferson Circuit Court, Chancery Branch, dismissing the petition of the plaintiffs in its judgment entered January 5, 1948 and affirmed by the Court of Appeals of Kentucky on appeal to that Court by the plaintiff P. O. Sweeney, (one of the plaintiffs in this action). 309 Ky. 465, 218 S.W.2d 30. They contend that under the authority of Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, not only the plaintiff Sweeney, but all members of the class—that is Negro citizens and taxpayers of Louisville—are precluded by the judgment in the State Court proceedings and that the defendants' plea of res judicata is dispositive of this action.

In the opinion of the Chancellor of the Jefferson Circuit Court, which was adopted as the opinion of the Court of Appeals, 309 Ky. 468, 218 S.W.2d at page 31, it is said: "The motion to strike was overruled for the sound reason that in the nature of the case it is clear that this is a representative suit such as is authorized by Section 25 of the Civil Code of Practice."

The principal ground relied upon by the plaintiffs in the State Court proceeding was that the practice and custom of denying Negroes the use of the golf courses and attendance at entertainments at the Amphitheatre in Iroquois Park, was violative of the Fourteenth Amendment to the federal Constitution and constituted a discriminatory segregation, depriving the plaintiffs and other Negro taxpayers and citizens of Louisville of their liberty and property without due process of law and the equal protection of the law.

In the case of Hansberry v. Lee, supra, 61 S.Ct. at page 117, the Supreme Court pointed out the recognized exception to the " * * * principle of general ap-plication in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."

the exception being that " * * * the judgment in a 'class' or 'representative' suit, to which some members of the class are parties, may bind members of the class or those represented who were not made parties to it."

The principal reliance of their contention of res judicata is Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832. In that action, Bullington was unsuccessful in the North Carolina Supreme Court on an appeal from the Superior Court of that State in an action in which he sought a deficiency judgment after having foreclosed a mortgage against Angel, a citizen of North Carolina, on land located in Virginia.

The North Carolina Supreme Court upheld a North Carolina statute, precluding mortgagees, trustees or holders of notes secured by mortgage or deed of trust from securing a deficiency judgment on account of such obligation.

Following the dismissal of Bullington's action in North Carolina, by its Supreme Court, Bullington instituted suit in the District Court of North Carolina and obtained a judgment, 56 F. Supp. 372, which was upheld by the Court of Appeals for the Fourth Circuit, 150 F.2d 679. Having granted certiorari, the Supreme Court reversed the North Carolina Supreme Court, holding that Bullington, after an adverse decision on a cause of action created by state law, could not start the litigation over again in a Federal Court and that there was raised and adjudicated in the State Court litigation the federal issues involved in the second suit. The Court said, 330 U.S. at page 189, 67 S.Ct. at page 661: "Since it was open for Bullington to come here to seek reversal of the decision of the North Carolina Supreme Court shutting him out of the North Carolina courts and he chose not to do so, the decision of the North Carolina Supreme Court concluded an adjudication of a federal question even

though it was not couched in those terms. For purposes of litigating the issues in controversy in the North Carolina action, the North Carolina Supreme Court was an intermediate tribunal. If a litigant chooses not to continue to assert his rights after an intermediate tribunal has decided against him, he has concluded his litigation as effectively as though he had proceeded through the highest tribunal available to him."

■ Defendants' argument is persuasive, but in the case of Trailmobile v. Whirls, 6 Cir., 154 F.2d 866, 871, the Court said "The interpretation by the state court of the rights of a citizen under a federal statute is not binding upon the federal courts."

The Trailmobile case was reversed by the U. S. Supreme Court, 331 U.S. 40, 67 S.Ct. 982, 986, 91 L.Ed. 1328, but in the Court's opinion, it is said "At the outset it is important, in view of certain questions which have been injected beyond the issues presented for decision, *to state explicitly what is not before us.* In the first place, we are not required to determine whether the class suit in the state courts constituted an adjudication of the rights of the parties involved in this litigation. That question was presented to the District Court and the Circuit Court of Appeals. Both determined it adversely to petitioners, but no error was assigned to this ruling in the petition for certiorari. *The question is therefore not before this Court and we express no opinion concerning it.*" (Emphasis added)

■ In view of the positive statement of the Court of Appeals of this Circuit in the Trailmobile case, which was unchallenged on the appeal, this Court denies the plea of res judicata.

■ IV. The defense on the merits by the Louisville Park Theatrical Association is the same defense interposed by and upheld by the Court in the state court proceedings, that is that the denial of admission to the Amphitheatre was not made by the City of Louisville or its Director of Parks, but by the Association in a "proper exercise" of its rights and as held by the Court of Appeals of Kentucky; "Insofar as the use of the amphitheater is concerned the petition is defective in that it does not allege that the plaintiff and those whom he represents among the colored race have ever made application to form an association and erect an amphitheater in one of their own parks as a facility which has been granted to those of the white race as represented by the Park Theatrical Association." [309 Ky. 468, 218 S.W.2d at page 36.]

One disparagement in the facts stated in the state court proceedings to the facts as stipulated in this action is that in the state court proceeding, it is stated that the petition alleged *and the Court takes judicial notice of the fact that the Amphitheatre was erected by an association of the citizens of the white race* and paid for by them, while it is stipulated in this action that the Amphitheatre was erected at the cost of the City of Louisville except for a $5,000 contribution made by the Park Theatrical Association. However, it seems to this Court that there has been no discrimination because nowhere is it alleged, proven in evidence or stipulated that the plaintiff Muir, or any organization to which he belongs have ever sought to secure possession of the Amphitheatre for the purpose of providing therein entertainment procured and paid for by them without cost or expense to the City of Louisville.

In the case of Lawrence v. Hancock, D.C. W.Va., 76 F.Supp. 1004, 1005, the question determined was thus stated "Can a municipality by leasing a swimming pool constructed with public funds to a private association of persons, relieve itself of the constitutional obligation to afford colored citizens equal rights with those of white citizens in the use of the public recreational facilities thereby provided?"

■ The Court there held that a city in allowing various groups to lease the Auditorium for private operation for a short period of time or to some particular group or association, allowing at the same time any Negro organization to lease the pool under the same terms on a non-discriminatory basis, did not violate the Fourteenth Amendment.

532

The Court refers to the case of Harris v. City of St. Louis, 233 Mo.App. 911, 111 S.W.2d 995.

In the case at bar, the Louisville Park Theatrical Association incurs all financial responsibility incident to contracting with the producing companies which stage the exhibitions. The City incurs no financial responsibility in that respect and has no voice in the sale of tickets and has supervision of the admission charges only to the extent of keeping them on the basis of reasonableness in order to promote widespread attendance. The days which the Theatrical Association actually occupies the Amphitheatre are comparatively few; for instance, approximately thirty days and not a sufficient length of time to interfere with a similar use and occupancy of the Amphitheatre for like purposes by another or other organization.

The contract of leasing between the City and the Theatrical Association does not by its terms prohibit other organizations from using it nor was there any proof that other organizations have not used it. It therefore appears that the conclusion of the state court, that the denial of the right of admission to the plaintiff Muir was a proper exercise of the rights of the Association, is legally sound. It is therefore concluded that the complaint as to the Louisville Park Theatrical Association is without merit as to the City of Louisville, insofar as it relates to the Amphitheatre in Iroquois Park.

V. With respect to the golf courses, a different situation exists.

The City of Louisville owns, maintains and operates the golf courses which are all located within the parks set aside by the City for the exclusive use of white persons. None of the parks set aside for use by the Negroes is equipped with a golf course.

In the case of Beal et al. v. Holcombe, Mayor of Houston, Texas et al., 103 F. Supp. 218,[1] recently decided by Judge T. M. Kennerly, in the District Court for the Southern District of Texas, Houston Division, the facts are much like those in the present case. The City of Houston maintains a system of public parks. Of a total of 21 parks in the system, 17 were maintained for the exclusive use of white people, in 3 of which there were golf courses. The remaining 4 parks in the system, in none of which was there a golf course, were maintained for the exclusive use of Negroes. It is held, on the authority of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, considered in the light of the subsequent cases of Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; Henderson v. U. S., 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302; McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149 and Rice v. Arnold, 340 U.S. 848, 71 S. Ct. 77, 95 L.Ed. 621, that "* * * the action of the City of Houston in setting aside certain of its parks for the use of white people and certain others for the use of Negroes may be regarded as lawful, if the facilities furnished or provided for each race are substantially equal."

The Court concludes that the failure to provide golf courses in parks used by the Negroes is not either as a matter of law or of fact, a discrimination against the Negroes.

In Rice v. Arnold, Fla., 54 So.2d 114, the Florida Supreme Court, in compliance with the mandate of the United States Supreme Court, 340 U.S. 848, 71 S.Ct. 77, 95 L.Ed. 621, reconsidered its former holdings and opinion, Fla., 45 So.2d 195 "in the light of" Sweatt v. Painter, supra, and McLaurin v. Oklahoma State Regents, supra, and held for the second time that an allocation of certain days for the use of a municipally owned golf course in Miami, Florida, exclusively by colored persons and the allocation of certain days for the use of the course exclusively by white persons was not a denial of the constitutional rights to either the Negro or white persons and that providing separate but equal facilities for persons of different races as enunciated in Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, had been since the adoption of the Fourteenth Amendment to the Constitution, not violative of it.

In Boyer v. Garrett, D.C.Md., 88 F.Supp. 353, Judge Chesnut declined to strike down the doctrine that segregation of races with

[1] Reversed 193 F.2d 384.

respect to facilities afforded by the State for its citizens is within the constitutional exercise of the police power of the states respectively, provided, that the separate facilities afforded different races are substantially equal. On appeal, the District Court's decision was affirmed Boyer v. Garrett et al., 4 Cir., 183 F.2d 582; certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659.

The Board of Park Commissioners was created by Article VIII of Chapter 89–1 of Carrolls Kentucky Statutes. By Section 2848, the powers and duties of that Board were defined, among which was the power "to adopt rules and regulations for the reasonable and proper use, and for preventing injuries to or misuse of all parks, * * and park property generally; and to prevent disorder and improper conduct within the precincts of any park or inclosure, * * under control of said board of park commissioners. The police power of the city shall extend over the said park property of every kind as the same is or shall be acquired".

The Board under authority of this statute issued rules which assigned to Negroes in Louisville certain parks for their exclusive use and to white people certain other parks. William Warley challenged these rulings as invalid because in violation of the Fourteenth Amendment. The Court of Appeals in Warley v. Board of Park Com'rs, 233 Ky. 688, 26 S.W.2d 554 denied this contention on authority, among other cases, of Plessy v. Ferguson, 163 U.S. 537, 540, 16 S.Ct. 1138, 41 L.Ed. 256.

K.R.S. Section 97.250(2) confers upon the Director of Parks and Recreation power to make rules for the reasonable and proper use, management and control of park property.

It is concluded that the defendant Morgan, as Director of Parks and Recreation had the right to make and enforce the existing rules which, in effect, segregate the Negroes and white people in their enjoyment of the parks and recreational facilities, provided the facilities furnished are substantially equivalent for the two races.

As said by Judge Chesnut in Law v. Mayor and City Council of Baltimore, D.

C.Md., 78 F.Supp. 346, 350: "The City is under no legal obligation to provide golfing facilities as a particular feature of its whole park services and presumably may constitutionally and lawfully discontinue golfing facilities as a recreation pleasure at any time. Nor is it meant to rule that it is not within the power of the Board in its judgment, pursuant to the general policy of segregation, to establish separate golf courses for white and colored citizens. But so long as the City furnishes golfing facilities the quality must be substantially equivalent for the two races."

In the Law case, supra, it was contended by the City that furnishing to the Negroes exclusively a nine hole course and furnishing to the white golfers three eighteen hole courses was equal facilities, the number of Negro golfers numbering less than 100 compared to 5000 or more white golfers. The Court rejected this contention and held that the plaintiff had a personal constitutional right to substantially equal facilities with white golfers and was entitled to enjoy the opportunity of the game afforded by the better golf course.

In the case at bar, there is no question of equal facilities for playing golf. The parks set aside for Negroes are not equipped with golf courses. Negroes are entitled to participate in the enjoyment of golf courses built and maintained with public funds.

It was suggested by defendant Morgan that if demand by the Negroes was made, he would recommend that the City construct and operate a golf course in one of the parks provided for use exclusively for Negroes. Whatever effect this offer may have upon the controversy in the future, it can have no weight presently. This case must be determined upon the existing facts and plaintiffs' present rights. State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 345, 59 S.Ct. 232, 83 L.Ed. 208.

What is here said in respect of the golf courses is equally applicable to the fishing lake. The plaintiff, Mona Carroll, is entitled to enjoy this facility, it not being claimed by the City that an equivalent facility is available in any of the parks set aside for Negroes.

It becomes the duty of the Director of Parks and Recreation to provide facilities for plaintiff P. O. Sweeney and Mona Carroll and the class represented by them respectively, for playing golf and fishing upon a basis and with facilities substantially equivalent to those furnished in that respect to white persons. How this shall be done presents a problem for the Director of Parks and Recreation, to determine what shall be done to afford substantially equal facilities to Negro golfers, necessarily having consideration for the number of Negro golfers. Law v. Mayor et al., 78 F.Supp. at page 351.

The Director and the City, in providing equal facilities, are authorized by the police power inherent in them to make such rules and regulations as will secure public peace and safety. Berea College v. Commonwealth, 123 Ky. 209, 94 S.W. 623.

A judgment adjudicating the rights of the parties as here found will be tendered by Counsel for plaintiffs, upon notice to opposing Counsel.

### Amended Findings of Fact and Conclusions of Law

On page 17 of this Court's memorandum [102 F.Supp. 533] it is said "What is here said in respect of the golf courses is equally applicable to the fishing lake. The plaintiff, Mona Carroll, is entitled to enjoy this facility, it not being claimed by the City that an equivalent facility is available in any of the parks set aside for Negroes."

It is further concluded, as one of the Conclusions of Law, that it is the duty of the Director of Parks and Recreation to provide facilities for plaintiff Mona Carroll, and the class represented by her, for fishing, upon a basis and with facilities substantially equivalent to those furnished in that respect to white persons.

Counsel have agreed that Mona Carroll produced no evidence, on which it might be found as a fact or on which a conclusion of law might be founded, that fishing facilities were not afforded to Negroes in the parks set apart for the exclusive use of Negroes substantially equivalent to those provided for the exclusive use of white persons.

The Court, therefore, deletes from its memorandum the above quoted paragraph with respect to the fishing lake and all of the conclusions of law holding that the Director of Parks and Recreation shall provide facilities for the plaintiff Mona Carroll and the class represented by her for fishing.