M. W. PLUMMER, et al., Plaintiffs,

v.

Bob CASEY, The Duly And Legally Elected, Qualified And Acting County Judge of Harris County, Texas, et al., Defendants.

Civ. A. 7662.

United States District Court
S. D. Texas. Houston Division.

Dec. 29, 1955.

Henry E. Doyle and Francis L. Williams, Houston, Tex., for plaintiffs.

Burke Holman, County Atty., and Madison Rayburn, Asst. County Atty., Houston, Tex., for defendant Harris County, Texas.

Merrill & Scott, Houston, Tex., for defendant W. F. (Dee) Derrington.

CONNALLY, District Judge.

The instant action is another involving the question of segregation. At issue here is the claimed right of the plaintiffs to patronize a cafeteria maintained in the Courthouse of Harris County, Texas. The plaintiffs are members of the Negro race. They are citizens and taxpayers of the State of Texas and of the United States, and are residents of this District and Division. In their individual right, and on behalf of all other persons of the Negro race similarly situated, plaintiffs complain of the duly elected, qualified and acting County Judge and members of the Commissioners' Court of Harris County, Texas, who collectively compose the governing body of Harris County, Texas, a body corporate and politic, and a political subdivision of the State of Texas. An additional defendant is one W. F. Derrington, lessee and operator of the Courthouse cafeteria and its appurtenances.

Jurisdiction is invoked under §§ 1331 and 1343 of Title 28 U.S.C.A. Plaintiffs contend that the equal protection of the laws guaranteed to them by the Fourteenth Amendment to the Constitution of the United States is denied them, in that they are and have been routinely excluded from the Courthouse cafeteria solely by reason of their race and color. Specifically, plaintiffs allege that they were excluded on August 27, 1953, when they sought to buy and consume food upon the premises.

By way of relief, plaintiffs seek a declaratory judgment to the effect that the custom, practice and policy of excluding Negroes from the facilities of the cafeteria constitute a denial of the equal protection of the laws to plaintiffs and are unlawful; and a permanent injunction restraining the defendants from further pursuing such policy of exclusion of the colored race solely for racial reasons.

It is the County's position that under the law of this State it may sell or lease County property not immediately needed for governmental purposes, and that by reason of its lease to Derrington, it has no power or right to control the premises or the operation of the cafeteria thereon by the lessee; that in executing the lease, the County acted in a corporate and private capacity, and the leased premises were not burdened with any devotion to public use, while the rentals received therefor were and are expended for governmental purposes for the equal benefit of all citizens; and that the lessee, like any other private restaurateur (and unlike a common-law innkeeper) may serve, or refuse to serve, whomsoever he chooses. The lessee Derrington points out that he, as an individual, owes no obligation of equal protection to the plaintiffs or any other person, and adopts the contentions made by the County.

Plaintiffs did not apply for a preliminary injunction, and the action has remained on the docket until called for hearing in due course on the merits, and on plaintiffs' application for declaratory judgment and permanent injunction.

The facts are not in dispute. In the summer of 1953, a new Courthouse in

and for Harris County was substantially completed and was occupied. The edifice was constructed with public funds, the proceeds of tax moneys and of a duly authorized bond issue. The structure houses the Courts, offices of the County officials, and other State and County instrumentalities. In the basement, kitchen and other facilities necessary for the operation of a cafeteria were installed. The County never operated the cafeteria, but leased same to the defendant Derrington from the beginning. It is stipulated that the lease to Derrington was made after advertising for and receiving bids from any and all interested parties, and that the ensuing lease agreement was in all respects a bona fide and arm's length transaction, and entered into in compliance with all requirements of law. The term of the lease was from June 10, 1953, to December 31, 1954. Save for certain routine provisions that the lessee would not permit waste, disorder, etc., in which event certain control might be assumed by lessor, the lease vested sole and exclusive control of the premises in the lessee for the purpose of operating a cafeteria: A substantial and reasonable rental was provided for. While no express option to renew was reserved in the lease, there was a tacit understanding that the lessee would make substantial investments in equipment, etc., and that he might renew on expiration of the original lease; and pursuant thereto, the original lease has been renewed by a second instrument identical in all respects except the term thereof, such latter term running from January 1, 1955, to December 31, 1956.

The cafeteria is patronized principally by Courthouse employees, jurors, and others having business in the building. It has always been open to the general public as an eating place. On August 27, 1953, the plaintiffs undertook to purchase food in the cafeteria and were not permitted to do so by the lessee and manager, the defendant Derrington. His action in this respect was due solely to the fact that the plaintiffs were members of the colored race. With limited and insignificant exception, Derrington has operated the cafeteria since the inception of his lease for patronage only by members of the white race. He expects to continue to do so unless and until restrained by Court action.

The present civil action was filed in this Court August 28, 1953, so that at the time of executing the renewal lease both lessor and lessee had knowledge of the claims which plaintiffs asserted, and of the pendency of this action seeking to enforce them.

In recent years, many facets of the segregation question have been before the Courts. The equality of the races before the law, and their entitlement to equal enjoyment of State and municipally-operated facilities for education, recreation, etc., are now fully recognized and enforced. It is common knowledge that efforts at segregation under varying circumstances have been stricken down in the public schools,[1] in municipally-owned golf courses[2] and swimming pools[3], and in public parks[4] and beaches.[5]

In view of the foregoing authorities, there can be little doubt but that plaintiffs are entitled to relief against Harris County. Having undertaken to furnish eating facilities to its

1. Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; McLaurin v. Oklahoma State Regents for Higher Ed., 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149; Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884.

2. Beal v. Holcombe, 5 Cir., 193 F.2d 384; Holmes v. City of Atlanta, 5 Cir., 223 F.

2d 93; Sweeney v. City of Louisville, D. C., 102 F.Supp. 525.

3. Kansas City, Mo. v. Williams, 8 Cir., 205 F.2d 47; Lawrence v. Hancock, D. C., 76 F.Supp. 1004; Culver v. City of Warren, 84 Ohio App. 373, 83 N.E.2d 82.

4. Tate v. Department of Conservation, D. C., 133 F.Supp. 53.

5. Dawson v. Mayor, etc., of Baltimore, 4 Cir., 220 F.2d 386.

citizens, the County, so far as it is able, must afford comparable and substantially equal treatment to all, without regard to color. The County has not established, nor is there maintained, any comparable eating facility in the Courthouse available to Negroes. The County has renewed its lease with Derrington with full knowledge of all of the foregoing facts and of the pendency of this action. In doing so, it took no steps looking toward provision for appropriate accommodations for plaintiffs and others of their race. This constituted a denial to these plaintiffs of the equal protection of the laws to which they were and are entitled. Lawrence v. Hancock, supra.

The relief, if any, to which plaintiffs may be entitled against the defendant Derrington presents a more. difficult question. While the Courts have been quick to strike down colorable and spurious lease agreements, or other devices designed solely to permit unlawful segregation, Lawrence v. Hancock, supra; Tate v. Department of Conservation, supra, by stipulation here, the lease was in all respects bona fide, and the exclusion of plaintiffs on August 27, 1953, was the act of Derrington alone.[6]

██ Conceding for the moment that a restaurateur at common law may arbitrarily select his clientele, in my judgment, that privilege does not extend to the defendant Derrington under present circumstances. It must be borne in mind that the lease to Derrington was one of long duration. In operating the cafeteria upon the Courthouse premises, he does so side by side with all other County offices and instrumentalities. These fa-

cilities were installed by the County, and leased to Derrington, to serve as a convenient eating place for those having business with the County. In acquiring the concession under these circumstances, Derrington was charged with notice of these obvious facts. He had actual knowledge of the pendency of this action when he renewed and accepted the present lease. To adopt the language of the Court in Nash v. Air Terminal Services,[7] the operation of the cafeteria here is too close, in origin and purpose, to the functions of the County government to allow the concessionaire the right to refuse service without good cause.

Judgment will enter declaring that the defendant Harris County by its acts may not constitutionally deny the plaintiffs and other members of the Negro race similarly situated the right to patronize the Courthouse cafeteria, and an injunction will enter preventing and restraining the defendant Harris County from renewing or extending the present lease, from executing a new lease, or otherwise divesting itself of management and control of the premises without specific assurances that facilities will be made available for the use of colored persons under circumstances and conditions substantially equal to those afforded members of the white race. The judgment likewise will declare that under the circumstances here prevailing, the defendant Derrington, subsequent to the date hereafter mentioned, may not continue to exclude members of the colored race from patronage in the cafeteria solely by reason of their race or color.

By reason of the fact that changes in many of the policies and practices now

---

6. The stipulation recites, in part,

"That the plaintiffs named in the above styled and numbered cause presented themselves for service in the cafeteria of the Harris County Court House, Houston, Texas, on the 27th day of August, 1953, while defendant W. F. (Dee) Derrington had said cafeteria under his sole direction, supervision, authority, sanction, instruction and control; and that he, the said defendant, informed plaintiff M. W. Plummer that said cafeteria did not,

and would not serve colored people, including plaintiffs and each of them, and thereafter said defendant removed the items of food from the tray of plaintiff M. W. Plummer.

"That said defendant W. F. (Dee) Derrington has the said cafeteria under his sole control, supervision, authority, direction, instruction and sanction on the date of these stipulations."

7. D.C.E.D.Va., 85 F.Supp. 545. :

prevailing in the operation of the cafeteria may be desired by the defendants, the entry of an injunction as to the defendant Derrington will be withheld for a period of ninety days.

The foregoing is adopted as Findings of Fact and Conclusions of Law.

Clerk will notify counsel.